# IN THE SUPREME COURT OF TEXAS

━━━━━━━━

No. 17-0637

━━━━━━━━

THE DALLAS MORNING NEWS, INC. AND KEVIN KRAUSE, PETITIONERS

v.

LEWIS HALL AND RICHARD HALL, INDIVIDUALLY AND ON BEHALF OF
RXPRESS PHARMACIES AND XPRESS COMPOUNDING, RESPONDENTS

━━━━━━━━

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

━━━━━━━━

**Argued December 6, 2018**

JUSTICE BROWN delivered the opinion of the Court.

JUSTICE BUSBY did not participate in the decision.

Lewis and Richard Hall sued The Dallas Morning News and Kevin Krause for defaming them and their compounding-pharmacy business venture. The News moved to dismiss under the Texas Citizens Participation Act. As explained below, we hold that the respondents have not carried their burden to survive dismissal under the Act. We also determine that the News's coverage of third-party judicial allegations is statutorily protected. Accordingly, we reverse the court of appeals and render judgment that the action be dismissed. The cause will be remanded to the trial court for entry of a judgment of dismissal and a determination of the costs and fees to be awarded to the petitioners.

# I

## A

This case arises from a series of articles written by Kevin Krause and published by The Dallas Morning News (collectively "the News") covering the Halls and their pharmaceutical business—Rxpress Pharmacies and Xpress Compounding (collectively "Rxpress"). Rxpress is a compounding pharmacy, which means it mixes and alters medications to create its own drugs. The compounding-pharmacy industry has grown rapidly and become very lucrative, especially through the sales of high-priced designer drugs. But as the industry has grown, it has suffered from increased scrutiny and controversy. In 2013, Congress passed legislation to improve oversight of compounding operations. Compounding Quality Act, 21 U.S.C. § 353b (2013). And in 2015, in response to concerns about compounding pharmacies' marketing tactics, Texas enacted legislation allowing state regulators to obtain pharmacy financial records. Act of May 22, 2015, 84th Leg., R.S., ch. 599, § 3, 2015 Tex. Gen. Laws 2012 (codified at TEX. OCC. CODE § 556.051).

The national media took notice when Tricare, a military pharmacy-benefits provider, blamed compounding pharmacies for a significant rise in their outpatient-drug costs. The pharmacies were accused of shady practices such as cold calling military retirees, suggestively inquiring into their need for pain care, and then selling them compounded drugs. Instances of falsified Tricare billing, as well as compounding pharmacies paying kickbacks to marketers and doctors in exchange for prescriptions, have resulted in increased legislative and judicial scrutiny.[1]

---

[1] Melanie Evans, *Cheap Custom-Made Versions of High-Cost Drugs Spur Backlash*, WALL ST. J., (Sept. 9, 2018), https://www.wsj.com/articles/cheap-custom-made-versions-of-high-cost-drugs-spur-backlash-1536501600?mod=searchresults&page=1&pos=7; Julie Appleby, Kaiser Health News, *Pharmacy-Made Pain Creams Flagged On Fears Of Medicare Fraud And Risk*, WASH. POST (Aug. 9, 2018), https://www.washingtonpost.com/national/health-science/pharmacy-made-pain-creams-flagged-on-fears-of-medicare-fraud-and-risk/2018/08/09/0620c758-9bbb-11e8-a8d8-

Rxpress did not escape the controversy. In September 2015, it sued Ruth Haynes, its former bookkeeper, for falsely representing that she was a certified public accountant and for causing Rxpress to incur over $12 million in unnecessary federal income taxes. In her responsive pleadings, Haynes alleged Rxpress paid kickbacks to physicians, schemed with other physicians to circumvent anti-kickback laws, and committed tax evasion and stock fraud.

In January 2016, the Halls sued their estranged business partners, Scott Schuster and Dustin Rall, for fraud, theft, breach of fiduciary duty, and other torts. The allegations included charges that Schuster and Rall wrongly diverted millions of dollars of partnership property to themselves. In their filings, the Halls admitted that early in the venture's history—around 2013—they discovered that Rxpress had been illegally charging commissions for prescription sales, but they had since then taken steps to correct their actions.

Also in January 2016, Xpress Compounding sued Prime Therapeutics, a pharmacy-benefit manager, to prevent Prime from removing Xpress from Prime's pharmacy network. Prime responded that it terminated its contract with Xpress due to internal auditing results. According to Prime, Xpress had a ninety-one percent error rate for audited prescriptions, suffered invoice shortages and billing inconsistencies, refilled unauthorized prescriptions, and manipulated billing to avoid clinical-review requirements. And in February 2016, Ancillary Medical Services Management sued the Halls for embezzlement, breach of fiduciary duty, fraud, and other torts involving Ancillary's investment in Rxpress.

---

9b4c13286d6b_story.html?utm_term=.416bbf2a8ad2; Opinion, *Out-of-Control Compounding of Drugs*, N.Y. TIMES (Oct. 10, 2012), https://www.nytimes.com/2012/10/10/opinion/out-of-control-compounding-of-drugs.html.

Finally, Department of Defense agents, under a search warrant issued by a federal magistrate in the Northern District of Texas, raided the home of Nathan Halsey, a pharmaceutical marketer, on February 5, 2016. The warrant authorized the agents to search for and seize "all communications" between "Nathan Halsey, Britt Hawrylack, Matthew Hawrylack, Dustin Rall, Scott Schuster, Richard Hall, Lewis Hall, Jr., and any other associate of Rxpress Pharmacy, Rxpress Laboratories, Tactical Health Care Partners, and Tiger Racing Team that" related to, among other things, "the submission of claims for reimbursement for any health care service, prescription drug, or testing, or the facilitation of payment to recruiters, marketers, doctors, beneficiaries or others for referral to Rxpress Pharmacy, Rxpress Laboratories, Tactical Health Care Partners, and Tiger Racing Team." The search warrant also directed agents to communications that "show or demonstrate connections or relationships such as ownership, control, responsibility, direction, or authorization within Rxpress Pharmacy, Tactical Health Care Partners, and Tiger Racing Team."

**B**

In February and March 2016, Krause wrote, and the News published, a series of articles about the compounding industry, including several that featured Rxpress. The first, "North Texas Pharmacy in Federal Probe is Accused of Paying Kickbacks to Doctors," ran on February 5 and focused on Rxpress. Noting that "[f]ederal authorities are investigating" Rxpress, it drew largely from the Haynes and Schuster/Rall lawsuits as well as the Halsey search warrant.

The next article, "Texas Pharmacy Regulators Have New Law to Scrutinize Financial Ties to Doctors," appeared on February 9. In it, the News described the new Texas law and concerns in Texas and across the nation that physicians were receiving inappropriate financial incentives for

4

prescribing compounded medications. It further stated that Rxpress was "being investigated for possible violations of the anti-kickback law by the Department of Defense due to its use of Tricare money" and noted that the investigation could focus on either of two federal anti-kickback laws.

Another article, appearing on February 24, detailed the indictment of another Metroplex-area compounding pharmacy. It noted that this case was the "first federal indictment in North Texas in connection with the government's large-scale criminal investigation into compounding pharmacies." It added that Rxpress was "under investigation in connection with similar allegations."

In a final article, "North Texas Compounding Pharmacy Under Federal Scrutiny was Booted from Private Network over Fraud Concerns," the News reported on Rxpress's suit against Prime and quoted Prime's filings alleging it terminated its contract with Rxpress due to audit findings "consistent with . . . fraud, or at a minimum, inaccurate record keeping." The article referred to the Haynes lawsuit, highlighting accusations that Rxpress paid illegal kickbacks to physicians, and to the Ancillary lawsuit, noting allegations that the Halls had used their "ill-gotten gains" to pay for luxuries like two jets, exotic vacations, and real estate. All in all, the articles portray Rxpress as a deeply troubled business venture under pressure from both civil lawsuits and a federal investigation.

## C

Rxpress sued the News for defamation for publishing statements that "[f]ederal authorities are investigating [Rxpress]." Rxpress further charged that, by including the claim that Rxpress was under investigation in its separate coverage of other pharmacies' wrongdoing, the News had implied that Rxpress was guilty of misconduct.

5

The News moved to dismiss the claims under the Texas Citizens Participation Act. It argued that the Halsey search warrant conclusively established Rxpress was indeed under investigation. The News added that Rxpress could not meet its burden to show that the articles were not substantially true and that the articles' reporting of third party allegations in civil lawsuits and other official proceedings was both true and privileged.

In response, Rxpress insisted that it was not under federal investigation. As support, it submitted a declaration by Richard Hall in which he denied knowledge of any investigation involving Rxpress and Tricare. He knew Rxpress was not under investigation, he testified, because when he asked enforcement officers whether it was, they told him it was not. Hall further relied on an expert report by Michael Heiskell, a criminal-defense attorney. Heiskell opined that the search warrant did not support any conclusion that Rxpress was under or the subject of a federal investigation into healthcare fraud or any other criminal violation. The trial court denied the motion to dismiss. The News then filed an interlocutory appeal.

**D**

The court of appeals held that the articles have at least two gists. 524 S.W.3d 369 (Tex. App.—Fort Worth 2017).[2] First, "a person of ordinary intelligence could conclude that one gist of the publications was that Rxpress was under federal investigation for violating criminal laws aimed at prohibiting fraud in the healthcare context, including Tricare." *Id.* at 376. Second, "federal investigators were cracking down on fraud in the compounding pharmacy industry, including in

---

[2] The panel at the court of appeals consisted of Justices Walker, Meier, and Gabriel. Justice Meier authored the court's opinion; Justices Walker and Gabriel concurred without opinion.

6

North Texas, not only by making arrests but also by continuing to investigate compounding pharmacies, including RXpress." *Id.*

The News primarily argued to the court of appeals that the search warrant establishes its substantial-truth defense under section 27.005(d) of the Act. TEX. CIV. PRAC. & REM. CODE § 27.005(d) ("[T]he court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."). But the court of appeals concluded that the search warrant creates dueling inferences and noted that the inference that Rxpress was under investigation "is but one reasonable *inference* to be drawn from the four corners of the search warrant," but "not the only reasonable inference to be drawn." 524 S.W.3d at 377–78. "An equally reasonable, if not much stronger, inference," the court continued, "is that *Halsey* was under investigation by the federal government, *not [Rxpress]*." *Id*. at 378.

After holding the News had not established its substantial-truth defense, the court of appeals turned to whether Rxpress had satisfied its burden to prove a prima facie case of defamation. Incorporating its previous discussion on the Halsey search warrant, the court of appeals maintained that "the search warrant is itself some evidence that [Rxpress was] not under federal investigation." *Id.* Next, the court leaned on the Hall declaration, overruling the News's personal-knowledge and hearsay objections. *Id*. at 379. Rxpress, the court of appeals held, had met its burden to state a prima facie case of defamation. *Id.*

After reviewing the civil lawsuits and declaring they did not have much—if anything—to do with healthcare fraud, the court of appeals concluded that the News had selectively incorporated statements about fraud in the lawsuits and juxtaposed them against reports about investigations

7

into other compounding pharmacies. This, the court stated, cast Rxpress in a worse light than did the civil proceedings themselves. *Id.* at 382–83. The court held, therefore, that Rxpress had met its burden to establish a prima facie case that the gists were not substantially true. *Id.* at 383.

We granted the News's petition for review.

## II

### A

The Texas Citizens Participation Act is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern. *See In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). A defendant in a case that "is based on, relates to, or is in response to a party's exercise of the right of free speech" may move for dismissal under the Act. TEX. CIV. PRAC. & REM. CODE § 27.003(a). Dismissal requires two steps. First, the party moving for dismissal must show, by a preponderance of the evidence, that the "legal action is based on, relates to, or is in response to a [movant]'s exercise of the right of free speech." *Id.* § 27.003(a) (internal punctuation omitted). The burden then shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Additionally, subsection (d) requires a court to dismiss the legal action if "the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

A prima facie case is "the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016) (citing *Lipsky*, 460 S.W.3d at 590). Requiring "clear and specific evidence" means the plaintiff "must provide enough detail to show the factual basis for its claim" and must provide

enough evidence "to support a rational inference that the allegation of fact is true." *Lipsky*, 460 S.W.3d at 590–91; TEX. CIV. PRAC. & REM. CODE § 27.005(c). The plaintiff may rely on circumstantial evidence—indirect evidence that creates an inference to establish a central fact— unless "the connection between the fact and the inference is too weak to be of help in deciding the case." *Lipsky*, 460 S.W.3d at 589.

If the plaintiff fails to carry its burden—or if the movant establishes the essential elements of a valid defense under section 27.005(d) —the trial court must dismiss the suit. In deciding if dismissal is warranted, we consider all the "pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." TEX. CIV. PRAC. & REM. CODE § 27.006(a). We review de novo the court of appeals' determinations that the parties met or failed to meet their burdens of proof under section 27.005. *See generally id.* § 27.005.

Neither party disputes that the Act applies to this case. Therefore, while the News retains the burden of proof to establish its subsection (d) claim that a preponderance of the evidence supports its substantial-truth defense, the burden under subsection (c) shifts to Rxpress to make out a prima facie case for each element of its defamation claim. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c), (d). Those essential elements are (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, and (3) was made with the requisite degree of fault. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). Of these elements, only falsity in dispute. To not be false, "[a] statement need not be perfectly true[] as long as it is substantially true." *Toledo*, 492 S.W.3d at 714 (citing *Neely v. Wilson*, 418 S.W.3d 52, 63–64 (Tex. 2013)).

Rxpress argues to this Court that the articles are capable of two defamatory meanings: (1) that Rxpress is "under investigation" for healthcare fraud and (2) that Rxpress has actually violated various civil and criminal healthcare laws. As both alleged meanings arise from the text of the articles, and nothing outside the articles is required to understand them, we classify them as "textual defamation[s]." *See Tatum*, 554 S.W.3d at 626 (defining textual defamation as "defamation that arises from the statement's text without reference to any extrinsic evidence").

Though the first meaning—that Rxpress is "under investigation"—is plainly and expressly set out in the articles, the second meaning—that Rxpress actually violated healthcare laws—is implied. So, this second meaning, though textual, is also classified as "implicit." *See id.* at 627. Because the second alleged meaning is an implication, we must ask if "an objectively reasonable reader would draw the implication that [Rxpress] allege[s]." *Id.* at 637.[3] So we face two allegedly defamatory meanings—that Rxpress was "under investigation" and that Rxpress has actually violated healthcare laws. The News does not dispute that these meanings, if shown to arise from false statements of fact, are capable of defaming Rxpress. But the News does not concede that it made any false statements. And it contends that the official-proceeding privilege and the third-party-allegation rule, codified in the Civil Practice and Remedies Code, mean the second alleged defamatory meaning—the implication that Rxpress has violated the law—is not actionable.

---

[3] The court of appeals asked if a reasonable reader *could* draw the defamatory meaning. 524 S.W.3d 369, 377 (Tex. App.—Fort Worth 2017). But we clarified in *Tatum* that the standard is *would* an objective reader draw the meaning, not *could*. 554 S.W.3d at 637.

**B**

**1**

We first consider whether, under the Act, Rxpress has satisfied its burden to establish—by clear and specific evidence—a prima facie case for every essential element of the defamation claim, including falsity. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c); *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013).[4] Rxpress relies on three documents to carry its burden: (1) the search warrant that the Department of Defense executed on Nathan Halsey in February 2016; (2) the affidavit of its co-owner, Richard Hall; and (3) Michael Heiskell's expert report.

We first consider whether the search warrant helps Rxpress prove falsity. According to Rxpress, the Halsey search warrant is clear and specific evidence that it was not "under investigation." Rxpress insists that as the search warrant was directed at and generally concerns Halsey, who has never been employed by Rxpress, it shows Halsey was under investigation—not Rxpress. But the News responds that the warrant expressly sought communications between Halsey on the one hand and, on the other, the Halls "and any other associate of Rxpress." The sought-after communications concerned "insurance reimbursements" and anything that might "show or demonstrate connections or relationships . . . within Rxpress."

Although the search warrant, which concerned possible violations of federal healthcare fraud laws, was directed at Halsey, it expressly focused on obtaining information about Rxpress. By its own terms, the warrant sought all communications among Halsey, the Halls, and other

---

[4] "The United States Supreme Court and this Court long ago shifted the burden of proving the truth defense to require the plaintiff to prove the defamatory statements were false when the statements were made by a media defendant over a public concern." *Neely*, 418 S.W.3d at 62 (citing *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 777 (1986)).

11

Rxpress owners and associates that related either to payments made by Rxpress or to aspects of Rxpress's "ownership, control, responsibility, direction, [and] authorization." The court of appeals concluded the warrant did not establish Rxpress was under investigation—a holding we do not reach today. But even if the court of appeals were correct, we struggle to see how a search warrant seeking documents and communications on Rxpress's owners and operations, in the context of an inquiry into possible healthcare fraud, is clear and specific evidence that Rxpress was *not* "under investigation."

**2**

We agree with the News that the Hall affidavit also does not point to falsity. A witness may testify to a matter only if the evidence "support[s] a finding that the witness has personal knowledge of the matter." TEX. R. EVID. 602. And hearsay—an out-of-court statement offered to prove the truth of the matter asserted—is inadmissible. TEX. R. EVID. 801, 802. The relevant portions of the Hall affidavit contain inadmissible hearsay and double hearsay: "We know this because we inquired, through counsel, directly of the enforcement officers . . . about whether any such investigation was occurring and we learned unequivocally, that it was not." Moreover, the portions of the affidavit that purport to be within Hall's personal knowledge are matters that Hall could not have personally known.

Even an executive "with his ear to the ground" is unlikely to have personal knowledge of a sealed Department of Defense investigation.[5] The only explanation Hall gives for how he knew

---

[5] The court of appeals ridicules the idea that Hall would not have been aware of the investigation: "We seriously doubt that Richard spent his days locked in a dark room, ears muffled, hands covering his eyes, blocking out all contact with the rest of the world. As the part-owner of a successful multi-million-dollar business, heavily involved in and responsible for its day-to-day operations, with his ear to the ground, Richard was more than competent to offer such testimony. . . ." 524 S.W.3d 369, 378 (Tex. App.—Fort Worth 2017).

Rxpress was not under investigation is the inquiry to and response by the enforcement officers. Even assuming those officers would discuss a sealed federal investigation if asked about it by the person under investigation, Hall cannot rely on these statements as the basis for his personal knowledge. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) (holding inadmissible testimony about events witness could not know about where only purported basis of knowledge was inadmissible hearsay). At best, the Hall affidavit is evidence that one of Rxpress's owners was not aware of an investigation. That's it, and that's not enough. Even if this fact creates an inference that Rxpress was not under investigation, "the connection between the fact and the inference is too weak to be of help in deciding the case." *In re Lipsky*, 460 S.W.3d 579, 589 (Tex. 2015). As with the Halsey search warrant, the Hall affidavit is neither clear nor specific evidence of a prima facie case of falsity.

**3**

The court of appeals did not rely on the Heiskell report, but Rxpress continues to cite it as evidence of falsity. In it, Heiskell maintains that the search warrant is proof that Rxpress was not under investigation. The News argues the report is inadmissible because Rxpress failed to demonstrate that an expert opinion is necessary to interpret the search warrant.

Testimony by an expert witness is admissible only "if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." TEX. R. EVID. 702. Notably, Rxpress makes no argument about why specialized knowledge is necessary to understand the search warrant. And we can think of none, either. A fact finder could easily read the search warrant and understand that it established where to search and what to search for. And a fact finder could reasonably draw a conclusion from the face of the

13

search warrant that the government had a particular interest in communications involving Rxpress. Because Rxpress has not demonstrated that Heiskell's specialized knowledge "will help the trier of fact to understand the evidence or to determine a fact in issue," his testimony is inadmissible and no evidence of falsity. *See id.*

Rxpress failed to carry its burden under the Act because it has not established a prima facie case that the News falsely reported that Rxpress was "under investigation." *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c). The News also argues that the court of appeals improperly rejected its substantial-truth defense under section 27.005(d) of the Act. TEX. CIV. PRAC. & REM. CODE § 27.005(d) ("[T]he court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim."). But because we hold that Rxpress failed to carry its burden to survive dismissal under section 27.005(c), we need not decide whether the News established its substantial-truth defense under section 27.005(d). Even if the search warrant does not establish by a preponderance of the evidence that Rxpress was "under investigation," as the court of appeals held, Rxpress fails to establish a prima facie case that the News's reporting was not substantially true.

## C

The second allegedly defamatory meaning the articles convey is the implication that Rxpress has actually violated healthcare laws. The News denies that it either expressly stated or even vaguely implied that Rxpress was guilty of any crime. Rather, it reported on official proceedings—the Halsey search warrant—and on third-party allegations—the various lawsuits

14

involving Rxpress. Such reporting, the News insists, is statutorily privileged. *See* TEX. CIV. PRAC. & REM. CODE §§ 73.002(a)–(b), 73.005(b).

Rxpress does not argue that the articles ever state directly that it is guilty of fraud and other misconduct; rather, it argues that the articles imply that it is guilty. "[A] plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). So even if a publication "gets the details right but fails to put them in the proper context and thereby gets the story's 'gist' wrong," it may be liable for defamation. *Id.* (internal citation omitted).

Generally, media outlets enjoy a privilege that protects publications describing official proceedings of public concern. TEX. CIV. PRAC. & REM. CODE § 73.002(a). If the report of the proceeding is substantially true—"a fair, true, and impartial account"—the publication is privileged and not actionable. *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714–15 (Tex. 2016). And while the defendant must prove the applicability of the privilege, the plaintiff bears the burden to prove the report was false. *Id.*

Similarly, media outlets that accurately report allegations made by a third party about matters of public concern can assert the truth as a defense. TEX. CIV. PRAC. & REM. CODE § 73.005(b). And because this third-party-allegation rule—like the official-proceeding privilege—bears on substantial truth, the plaintiff has the burden under the Act to show falsity at the motion-to-dismiss stage.

15

We recently recognized that true statements strung together and accompanied by speculative commentary might wrongly imply that the subject of a publication has committed a crime. *D Magazine Partners, L.P. v. Rosenthal* concerned an article, "The Park Cities Welfare Queen," that described a woman living in a wealthy neighborhood but receiving food stamps. 529 S.W.3d 429, 431–32 (Tex. 2017). When the woman sued D Magazine, the article's publisher, for defamation, the magazine argued that each statement in the article was literally true and that the article never expressly accused the woman of lying or committing fraud. *Id.* at 438. This argument was correct as far as it went, but the article also speculated that the plaintiff "must have been less than forthcoming" to welfare authorities. *Id.* at 437. And the magazine took the extra step of running the article under the topic heading "CRIME." *Id.* at 438.

We held that the article impliedly accused the woman of obtaining welfare benefits by fraud. *Id.* at 439. We highlighted sections of the article that juxtaposed statements in a way that insinuated accusations. For example, the article reported that the address on file with the welfare authorities was an older address. It then identified another document showing her current home was worth more than $1 million and noted parenthetically that "[f]alsifying such a document is a felony." *Id.* at 439. By combining facts in this way, with such statements about the law, in the magazine's section on "crime," we held the article taken as a whole implied that she had committed a crime. *Id.*

Rxpress seeks a holding like that in *Rosenthal*, but this case is not like *Rosenthal*. Rxpress does not cite, nor can we find, any statements in the News's articles implying that Rxpress is actually guilty of anything. In *Rosenthal*, the defendant made thinly veiled accusations such as the plaintiff "must have been less than forthcoming" and juxtaposed damning facts with seemingly

16

on-point criminal statutes. In this case, the News places the accusations against Rxpress in the context of the greater controversy facing the compounding industry, but that's it. It certainly makes clear that Rxpress was "under investigation." But Rxpress has already failed to carry its burden to show that that's not at least substantially true.

The News reported on the search warrant and on allegations made in the Prime, Haynes, and Schuster lawsuits. These lawsuits involved assertions by—and against—Rxpress that are certainly not flattering, especially when placed in proximity to the notion that Rxpress is under federal investigation. But not flattering is not defamatory—especially in the face of the third-party-allegation rule and the official-proceeding privilege. Basing its articles on the search warrant and court documents from the various lawsuits, the News fairly and accurately reported on the accusations, and qualified all of it with pervasive sourcing language:

> Federal authorities are investigating a North Texas compounding pharmacy accused of paying illegal kickbacks to physicians for writing prescriptions *according to court documents* obtained by The Dallas Morning News. Rxpress Pharmacy and related entities in the Dallas area also paid sales reps commissions to market the pharmacy's services to doctors in apparent violation of federal anti-kickback laws, *according to lawsuits*.
> . . . .
> *Disgruntled business partners and a pharmacy tax adviser leveled the accusations* against Rxpress in separate lawsuits. *The tax adviser said* doctors invested in the pharmacy and wrote prescriptions to drum up business for the company. Rxpress paid them kickbacks in the form of investor dividends, *she said*.

The media enjoy a privilege to report on judicial and official proceedings without regard for whether the information from such proceedings is actually true. *KBMT Operating Co.*, 492 S.W.3d at 714; *see also* TEX. CIV. PRAC. & REM. CODE §§ 73.002(a), 73.005(b). We have held that a plaintiff "who sues a media defendant for defamation over a report on official proceedings of public concern has the burden of proving that the gist of the report was not substantially true—that

17

is, that the report was not a fair, true, and impartial account of the proceedings. That burden is not met with proof that the report was not a substantially true account of the actual facts outside the proceedings." *KBMT Operating Co.*, 492 S.W.3d at 715. Rxpress, however, complains that, by reporting that it is "under investigation" and embroiled in litigation, the News has implied that it is guilty of violating the law. But to give credence to that complaint—and to affirm the court of appeals—"would ill serve the public's interest in government activities." *Id.* at 714.

The News argues that upholding the court of appeals' decision will chill First Amendment speech, and it is probably right. The media does not simply report on individual events in isolation. Commonly, reporting involves investigating, tracking down related stories, and providing context for readers. The Fourteenth Court of Appeals recently considered a defamation suit arising from an article about a physician, Dr. Joselevitz, whom the Texas Medical Board had investigated for negligently prescribing narcotic drugs, which resulted in the deaths of multiple patients. *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 853–54 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The article, "Texas doctors rarely charged in prescription drug epidemic," covered "pill mill" doctors and the broader opioid epidemic and featured Dr. Joselevitz prominently. *Id.* at 855. The court agreed with the media defendant's portrayal of the article as a "comprehensive investigation of regulatory action against, and the lack of criminal prosecution of, doctors who allegedly violate laws regarding prescription drugs." *Id.* at 864 (internal quotation omitted). But despite covering investigations into Dr. Joselevitz's prescribing practices and noting his partial blame in patients' deaths, the court did not conclude that the article implied Joselevitz was a "pill mill" doctor by reporting on those doctors in the same article. *Id.* at 863.

This case is more like *Joselevitz* than *Rosenthal*. Because the News's reporting fell within the protections provided by sections 73.002 and 73.005 of the Civil Practice and Remedies Code, Rxpress's second alleged defamatory meaning is statutorily privileged. Accordingly, the articles are "not a ground for a libel action." TEX. CIV. PRAC. & REM. CODE § 73.002(a). Because Rxpress has not met—and, under these circumstances, cannot meet—its burden under the Act to show a prima facie case for defamation, the News is entitled to dismissal.

\* \* \*

The court of appeals held that Rxpress satisfied its burden under the Act to defeat the News's motion to dismiss. Because that holding was incorrect, we reverse the judgment of the court of appeals. We further remand this cause to the trial court for entry of a judgment of dismissal and a determination of costs and fees to be awarded to the News under the provisions of the Act. *See* TEX. CIV. PRAC. & REM. CODE § 27.009.

_____
Jeffrey V. Brown
Justice

OPINION DELIVERED: May 10, 2019

19