**Opinion issued January 23, 2020**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-19-0009-CV**

————————————

**PROPUBLICA, INC.; HEARST NEWSPAPERS, LLC D/B/A THE HOUSTON CHRONICLE, CHARLES ORNSTEIN, AND MICHAEL HIXENBAUGH, Appellants**

**V.**

**DR. O. HOWARD "BUD" FRAZIER, Appellee**

---

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2018-45639**

---

## MEMORANDUM OPINION

Dr. O. Howard "Bud" Frazier sued ProPublica, Inc., Hearst Newspapers, LLC doing business as The Houston Chronicle, Charles Ornstein, and Michael Hixenbaugh [collectively, "ProPublica"], for defamation and intentional infliction

of emotional distress ["IIED"] in relation to a news story published about him on ProPublica's website and in The Houston Chronicle. ProPublica moved to dismiss under the Texas Citizens Participation Act ["TCPA"][1], and the trial court denied its motion. Because the trial court failed to follow the proper procedures in TCPA cases, we reverse the trial court's order and remand for further proceedings.

## BACKGROUND

Dr. O. Howard "Bud" Frazier is one of the world's leading heart transplant surgeons and is one of the medical researchers responsible for the development of the Left Ventricular Assist Device ["LVAD"], a device implanted in patients that pumps blood through the heart when the heart can no longer do so on its own. Frazier is the Director of Cardiovascular Surgery Research at Texas Heart Institute ["THI"], which is affiliated with, and housed and supported by, St. Luke's Episcopal Health System.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE §§27.001–27.011. The Texas Legislature amended certain provisions of the TCPA in 2019. Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, § 12, sec. 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010 (to be codified at TEX. CIV. PRAC. & REM. §§ 27.001, 27.003, 27.005–.007, 27.0075, 27.009–.010). The amendments became effective September 1, 2019. Id. at § 11. Because suit was filed before the effective date of the amendments, this case is governed by the statute as it existed before the amendments. *See id*. All our citations and analyses are to the TCPA as it existed prior to September 1, 2019.

*The Article*

On May 24, 2018, ProPublica published an article about Frazier on its website; the identical article appeared on the Houston Chronicle website on the same date. On Sunday, May 27, 2018, a print version of the article appeared in the Houston Chronicle. The article contained a quote in the headline: "Things . . . I just couldn't imagine," followed by the title: "A PIONEERING SURGEON'S HIDDEN HISTORY OF RESEARCH VIOLATIONS, CONFLICTS OF INTEREST AND POOR OUTCOMES."

The article recognized Frazier's status as a pioneer in the field of mechanical heart pumps, but also focused on:

(a) findings of research protocol violations that led St. Luke's/THI to voluntarily report the violations to the federal Office for Human Research Protections ("OHRP"), pledging several reforms, and repaying millions of dollars to the government;

(b) allegations contained in a prior federal lawsuit filed against St. Luke's/THI and Frazier;

(c) assertions from several of Frazier's colleagues about his conduct regarding the experimental LVAD research and reporting of its results;

(d) Frazier's failure to disclose conflicts of interest in medical journals; and

(e) the high rate of mortality among Frazier's patients, as reflected in official Medicare statistics.

3

The online versions of the article contain links to many of its authors' sources.

Some of those sources include:

(1)　"The Self-Reporting Letter"—a July 2008 letter from St. Luke's/THI to OHRP, in which it disclosed that it found "instances on ongoing research noncompliance in connection with" the HeartMate II Study. Specifically, the hospital reported that patients participated in Frazier's HeartMate II Study even though they did not meet the qualifications for participation. St. Luke's/THI agreed to repay millions of dollars that it had received in federal funding, to audit all then-current studies in which Frazier was the Principal Investigator, and to outsource their Institutional Review Board ("IRB").

(2)　"The Board Summary"—a document prepared by St. Luke's executives and presented to its Board of Directors, which was also described in the Self-Reporting Letter. The Board Summary found "ongoing research noncompliance" in connections with the protocols governing the HeartMate II Study. The Board Summary recommended repaying millions to the Centers for Medicare and Medicaid Services because of protocol violations in the HeartMate II Study "for claims associated with the use of the investigations devices in these patients. The Board review also references a Legal Compliance Review conducted by the Anson Group that focused on the HeartMate II study and its protocols. Finally, the Board Summary included information submitted by Dr. James Young, who was retained to assess the transplant program led by Frazier. In the Board Summary, Young characterized the program as "an aggressive program that pushes the limits."

(3)　"The Federal Qui Tam Lawsuit"—a lawsuit filed by St. Luke's employee, Joyce Riley, against St. Luke's. In the lawsuit, Riley alleged that an unlicensed physician, Dr. Branislav Radovanevic ("Brano"), illegally treated heart failure patients at St. Luke's/THI. The article quoted from Riley's pleadings: "Dr. Frazier knew of, directed, and personally participated in the fraudulent conduct and false claims described herein." The Article then summarized portions of Frazier's deposition in the lawsuit regarding Brano's participation in treating Frazier's patients.

4

(4)     "Statements by Frazier's Former Colleagues"—Dr. Frank Smart, a THI transplant cardiologist from 2003-2006, stated that Frazier implanted heart pumps in some patients that were not sick enough to justify the implant and that it was not the right thing to do.  He also reported that there were instances in which, once a patient received a pump, Frazier would then turn down donor hearts for those patients. Smart also reported "hiding" patients from Frazier so that he would not recommend experimental heart pumps to them.  Dr. Billy Cohn, a THI heart surgeon reported that Frazier did not want to publish their findings that a quarter of the initial 71 patients implanted with the heart pump had suffered strokes. Cohn said that Frazier didn't want to "freak people out" with research showing a high rate of serious complications. The Article says that the "initial stroke findings were never published in a formal study," but acknowledged that they were included in short abstracts at presentations.

(5)     "Evidence Regarding Failure to Disclose Conflicts"—the Article discussed research the reporters had obtained showing that Frazier disclosed conflicts of interest in only 10% of his papers. When one journal was contacted, its editor contacted Frazier for a response.  The editors reported back that Frazier had agreed to submit revised disclosure forms, which he did. And, the Board Summary had noted that he had failed to accurately complete a conflict of interest form and that the hospital had addressed the issue with him, but "Dr. Frazier still doesn't understand."

(6)     "Medicare Data Regarding Dr. Frazier's High Mortality Rate"— the Article stated that from 2010-2015, Frazier's mortality rate for LVAD patients was almost 50%, which the Article described as "one of the highest mortality rates in the nation."  The Article included Frazier's objection to using only Medicare patients in his mortality, but included an explanation of why it used such data, as well as including a hyperlink showing how it conducted its analysis.

After the Article was published, ProPublica made two minor corrections, as

follows:

An earlier version of this article incorrectly said that an abstract describing strokes in patients who received HeartMate II LVADs had

5

been presented at one conference. It was presented at two conferences. It also said that the abstract was not available online; the second abstract was online prior to publication of this article. The article also incorrectly characterized a legal settlement involving St. Luke's hospital, O.J. "Bud" Frazier and other defendants. The story said the $500,000 settlement did not include the share given to the nurse who brought the suit; the settlement did include the nurse's share.

### The TCPA Motion to Dismiss Proceedings

On July 9, 2018, Frazier sued for defamation and intentional infliction of emotional distress. After ProPublica filed its answer, it filed, within the statutory deadline, a Motion to Dismiss pursuant to the TCPA. Regarding Frazier's defamation claim, the motion alleged that (1) Frazier could not establish material falsity; (2) the article is privileged as a fair report of official proceedings and fair comment on matters of public concern; (3) that the Article accurately reported third-party allegations on matters of public concern, and that (4) many of the statements mentioned in Frazier's Petition are nonactionable opinion. Regarding Frazier's IIED claim, ProPublica argued it should be dismissed because (1) IIED is a "gap-filler" under Texas law and is barred by the First Amendment, and (2) its conduct was not "extreme and outrageous" as a matter of law.

### The Hearing on the Motion to Dismiss

On December 11, 2018, the trial court held a hearing on ProPublica's Motion to Dismiss. Before the hearing, ProPublica moved to strike several of Frazier's exhibits, primarily the expert report of Shannon LeBove. ProPublica argued that

LeBove's report "purport[ed] to interpret the meaning of the article." Specifically, ProPublica complained that LaBove "was asked by [Frazier's] counsel to evaluate whether an ordinary reader would believe the false impressions of Dr. Frazier created by the May 2018 article." ProPublica objected that LeBove's report constituted improper evidence because it purported to determine what a "hypothetical, objectively reasonable reader" would believe based on the article, and that such a determination was "a quintessentially judicial test." ProPublica also objected that LeBove's report was based, in part, on a survey of 12 people, who were asked to give their impressions of the story. The trial court denied ProPublica's motion to strike LeBove's report, stating that "I will give it the weight it deserves." In the trial court's Findings of Fact and Conclusions of Law, the trial court referenced the LeBove report four times as evidence it had relied on in reaching its decision.

At the hearing on the Motion to Dismiss, the parties also argued to the trial court about whose evidence it should consider in determining whether both parties had met their respective burdens of proof on the issue of falsity/substantial truth. At trial, Frazier's counsel argued that substantial truth was not a proper defense to be raised at the dismissal stage of the case.

> [Frazier's counsel]: And I think to be very, very clear that substantial truth, first of all, is not a defense at this stage. The Texas Supreme Court has been clear that because the . . Plaintiffs have the burden at this stage of litigation that to establish falsity, substantial truth is not a defense.

7

And that is the *D Magazine* case[.] . . . And the Texas Supreme Court is clear. At this juncture it's substantial truth, which are all of the arguments that the Defendants are making that they had all of these different things that showed that what they wrote in the report or that article is true. That's not a defense at this stage. *So, what we've heard from most of the Defendants' argument is not relevant to what the Court has to decide*. The only thing for us is establishing a prima facie case of defamation and the Defendants establishing their defense by a preponderance of the evidence. That's it. We're not here at this point trying to establish fact questions. And the Fort Worth Court said it best. "That the Supreme Court has rejected an argument that in a case involving a matter of public concern once a Plaintiff in a TCPA case has met her burden to establish by clear and specific evidence a prima facie case for falsity the Motion to Dismiss can be defeated by providing evidence to the contrary." The Texas Supreme Court has rejected the idea that if they provide evidence contradicting what we said is false that that helps them in any way. (Emphasis added).

[Trial Court]: That sounds very similar to the Supreme Court standard of disregarding evidence to the contrary. Maybe not indulging all inferences in your favor, but at least it sounds like the idea that we've had for a while of *disregarding evidence to the contrary*, which I know they told me some case law that says that's not the case here. But you're saying the *D Magazine* case supports your proposition? (Emphasis added).

[Frazier's counsel]: Yes, Your Honor. Like I said . . . . It's very clear. . . .

ProPublica's counsel responded on the substantial-truth issue as follows:

[W]ith regard to the *D Magazine* case. They are trying to turn First Amendment law on its head and completely misinterpreting this case. We're talking about two sides of the same claim, material falsity and substantial truth. *We're allowed to show our side of that claim*. So they're trying to turn that on its head and that is entirely inapposite with the First Amendment. So, they're supposed to be able to establish material falsity. We do have the right to establish substantial truth and *D Magazine* does not say differently. (Emphasis added).

8

After the trial court denied ProPublica's motion, it filed Findings of Fact and Conclusions of Law. The Findings of Fact reference only evidence presented by Frazier, and the Conclusions of Law state, "Defendants cannot raise the "substantial truth" defense at this stage of the proceedings as a matter of law."

***Findings of Fact and Conclusions of Law***

In its Findings of Fact and Conclusions of Law, the trial court found that the Article created five materially false impressions: (1) that Frazier had federal research violations, (2) that Frazier had ethical violations, (3) that Frazier hid research showing an increased rate of stroke in LVAD patients, (4) that Frazier had conflicts of interest that impacted the accuracy of his research about the HeartMate II, and (5) that Frazier was an old and incompetent surgeon who should not have been operating in his seventies. After concluding that Frazier had presented clear and specific evidence that these impressions were false, the trial court denied ProPublica's Motion to Dismiss, and this interlocutory appeal followed.

## DENIAL OF MOTION TO DISMISS

In its first issue, ProPublica contends that the trial court erred in denying its Motion to Dismiss under the TCPA. In connection with this issue, ProPublica contends that the trial court failed to properly apply the TCPA by (1) refusing to consider its arguments and evidence establishing that the article is substantially true; (2) refusing to consider its arguments and evidence establishing the fair reporting

9

and fair comment privileges set forth in Tex. Civ. Prac. & Rem. Code § 73.002(b)(1),(2); (3) refusing to consider appellant's arguments and evidence establishing a complete defense for Frazier's intentional-infliction-of-emotional-distress claim; and (4) relying on a "legally irrelevant and fatally flawed expert report and survey" in finding that Frazier had met his evidentiary burden to overcome dismissal. We address each argument respectively.

***Standard of Review and Applicable Law***

The Texas Citizens Participation Act is a bulwark against retaliatory lawsuits meant to intimidate or silence citizens on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *see In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). A defendant in a case that "is based on, relates to, or is in response to a party's exercise of the right of free speech" may move for dismissal under the Act. Tex. Civ. Prac. & Rem. Code § 27.003(a). Dismissal requires two steps. First, the party moving for dismissal must show, by a preponderance of the evidence, that the "legal action is based on, relates to, or is in response to a [movant]'s exercise of the right of free speech." *Id.* § 27.003(a) (internal punctuation omitted). The burden then shifts to the plaintiff to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). Additionally, subsection (d) requires a court to dismiss the legal action

if "the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

A prima facie case is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Hall*, 579 S.W.3d at 377; *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016) (citing *Lipsky*, 460 S.W.3d at 590). Requiring "clear and specific evidence" means the plaintiff "must provide enough detail to show the factual basis for its claim" and must provide enough evidence "to support a rational inference that the allegation of fact is true." *Hall*, 579 S.W.3d at 377; *Lipsky*, 460 S.W.3d at 590–91; TEX. CIV. PRAC. & REM. CODE § 27.005(c). The plaintiff may rely on circumstantial evidence—indirect evidence that creates an inference to establish a central fact—unless "the connection between the fact and the inference is too weak to be of help in deciding the case." *Hall*, 579 S.W.3d at 377; *Lipsky*, 460 S.W.3d at 589.

If the plaintiff fails to carry its burden—or if the movant establishes by a preponderance of the evidence the essential elements of a valid defense under former section 27.005(d) —the trial court must dismiss the suit. *Hall*, 579 S.W.3d at 377. In deciding if dismissal is warranted, we consider all the "pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Hall*, 579 S.W.3d at 377; TEX. CIV. PRAC. & REM. CODE § 27.006(a). We review de novo the court's determinations that the parties met or failed to meet their burdens

11

of proof under section 27.005. *See Hall*, 579 S.W.3d at 377; *see generally* TEX. CIV. PRAC. & REM. CODE § 27.005.

Neither party disputes that the Act applies to this case. Thus, the burden under subsection (c) shifts to Frazier to make out a prima facie case for each element of his claims. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(c), (d). The essential elements of a defamation claim are (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, and (3) was made with the requisite degree of fault. *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018). Of these elements, only falsity is in dispute. To not be false, "[a] statement need not be perfectly true[ ] as long as it is substantially true." *Toledo*, 492 S.W.3d at 714 (citing *Neely v. Wilson*, 418 S.W.3d 52, 63–64 (Tex. 2013)). If Frazier successfully makes a prima facie showing, ProPublica must establish its subsection (d) claim that a preponderance of the evidence supports its defenses. TEX. CIV. PRAC. & REM. CODE § 27.005(d).

### *Refusing to Consider ProPublica's Substantial-Truth Defense*

It is clear from the Findings of Fact and Conclusions of Law that the trial court disregarded, as it was urged to do so by Frazier's counsel, all ProPublica's evidence and arguments about substantial truth. ProPublica contends this was error. We agree.

12

The case that Frazier urged the trial court to rely on is *D Magazine Partners, LP v. Rosenthal*, 529 S.W.3d 429 (Tex. 2017). In *D Magazine*, the gist of the alleged defamatory story was that the plaintiff, Rosenthal, had fraudulently obtained welfare benefits. *Id.* at 439. The court held that Rosenthal presented a prima facie showing of falsity by introducing evidence that the Texas Health and Human Services Commission had conducted an investigation and had concluded that she engaged in no wrongdoing in obtaining the welfare benefits. *Id.* On appeal, D Magazine argued that it was entitled to dismissal because it had established its truth defense by a preponderance of the evidence. *Id.* at 440. The court disagreed that D Magazine had proved its defense by a preponderance of the evidence. *Id.* In so holding, it noted that, "[b]ecause falsity is an element of Rosenthal's claim, at this stage of the proceeding she was required to make a prima facia case by clear and specific evidence that the gist of the article was not substantially true. As discussed, Rosenthal has met this burden." *Id.* (citation omitted).

At least one appellate court has interpreted *D Magazine* to mean that if a plaintiff makes a prima facia showing of falsity, the media defendant is prohibited from attempting to prove its substantial-truth defense by a preponderance of the evidence by producing evidence that contradicts the plaintiff's prima facia evidence. *See Van Der Linden v. Khan*, 535 S.W.3d 179, 200 (Tex. App.—Fort Worth 2017, pet. denied) ("[T]he supreme court has rejected the argument that in a case involving

a matter of public concern, once a plaintiff has met his burden to establish by clear and specific evidence a prima facia case for falsity, the motion to dismiss can be defeated by providing evidence to the contrary.").

We believe that the Fort Worth court reads *D Magazine* too broadly. While it is true that *D Magazine* does not detail the media defendant's substantial-truth evidence, it does not say that the defendant's arguments and evidence should not be considered at all. We believe that, even if the plaintiff makes a prima facia showing of falsity with its own evidence, the defendant should be given the opportunity to meet its higher burden of proof—preponderance[2]—on the falsity/substantial truth issue.

Indeed, a more recent case from the Texas Supreme Court indicates that the substantial-truth defense continues to exist, and the defendant may attempt to establish it by a preponderance, even after a prima facia case of falsity has been made. In *Dallas Morning News, Inc. v. Hall*, the court noted that "[if] the plaintiff fails to carry its [prima facie] burden—or if the movant establishes the essential elements of a valid defense under section 27.005(d)—the trial court must dismiss the suit." 579 S.W.3d at 377. The court first considered only the plaintiff's evidence

---

[2]    We note that, effective September 1, 2019, defendants must prove their defenses "as a matter of law," an even higher standard than "preponderance." *See* TEX. CIV. PRAC. & REM. CODE § 27.005(d).

14

of falsity before concluding that the plaintiff had failed to make a prima facie showing of falsity. *Id.* at 379. The defendant had also argued that the trial court improperly rejected its substantial-truth defense under section 27.005(d). The supreme court did not evaluate whether the defendant had met its defense burden, noting that "[b]ecause we hold that [the plaintiff] failed to carry its burden to survive dismissal under section 27.005(c), we need not decide whether [the defendant] established its substantial-truth defense under section 27.005(d)." *Id.* at 380. The clear implication of these words is that, had the plaintiff made a prima facie showing of falsity, the supreme court would have considered whether the defendant had proved its substantial-truth defense. The supreme court did not question whether the substantial-truth defense could be proved by a defendant even after a plaintiff had made a prima facie showing of falsity.

Indeed, other courts have considered media defendants' defenses even after a plaintiff makes a prima facie showing. *See Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 285 (Tex. App.—Dallas 2015, pet. denied) (dismissing based on defendant's judicial-proceeding privilege and stating that "even if plaintiff met this [prima facie] burden, the trial court was required to dismiss his claims if [defendant] established by a preponderance of the evidence each essential element of a valid defense to [plaintiff's] claim"). This is true even when a plaintiff makes a prima facie showing in a defamation claim. *See Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL

3378904, at *10 (Tex. App.—Austin August 3, 2017, no pet.) (considering defendant's substantial-truth defense and concluding that it had not been proven by preponderance of evidence after plaintiff's prima facie showing of defamation).

We believe that our interpretation is consistent with the statute, which provides: "*Notwithstanding the provisions of Subsection (c)* [which requires the plaintiff to make a prima facia showing], the court shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." TEX. CIV. PRAC. & REM. CODE § 27.005(d). The statute itself makes it clear that the defendant's ability to put on evidence of its substantial-truth defense is not affected by the plaintiff's prima facie showing of falsity. Although falsity and substantial truth are two sides of the same coin, the parties, under the statute, have different burdens of proof. It makes no sense that a prima facie showing of falsity would always defeat a preponderance of substantial-truth. To accept the trial court's interpretation of the burden-shifting analysis in TCPA cases, i.e., that the burden never shifts on falsity if the plaintiff makes a prima facie showing, would deny media defendants the right to attempt to meet their own preponderance burden of proof. In fact, even before the defenses were incorporated into the TCPA in section 27.005(d), this Court held that "[a]n interpretation of the TCPA that would prohibit a movant from procuring dismissal based on a showing of truth would thwart the Legislature's declared

16

purpose for enacting the TCPA . . . ." *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 82 (Tex. App.—Houston [1st Dist.] 2013, pet. denied).

Because the trial court erred in not affording ProPublica the opportunity to attempt to prove its substantial-truth defense by a preponderance of the evidence, we sustain this portion of ProPublica's first issue.

### *ProPublica's Fair-Report and Fair-Comment Privileges*

In its Conclusions of Law, the trial court stated, "Defendants are not entitled to dismissal based upon the fair reporting privilege or the fair comment privilege, because neither privilege applies when a defendant acts with actual malice, as was unilaterally stipulated for purposes of this motion, and when a plaintiff establishes that defendants published false statements and impressions to a third party."

ProPublica contends the trial court erred by refusing to consider its arguments and evidence establishing the fair reporting and fair comment privileges set forth in section 73.002 of the Texas Civil Practices and Remedies Code, which provides:

> (a) The publication by a newspaper or other periodical of a matter covered by this section is privileged and is not a ground for a libel action. This privilege does not extend to the republication of a matter if it is proved that the matter was republished with actual malice after it had ceased to be of public concern.

TEX. CIV. PRAC. & REM. CODE § 73.002(a) (emphasis added).

17

The fair-report privilege bars liability for defamation when the publication is a "fair, true, and impartial account" of judicial, executive, and other official proceedings. *Id.* § 73.002(b)(1)(A-D). The fair-comment privilege covers "reasonable and fair comment on or criticism of . . . matter[s] of public concern published for general information. *Id*. § 73.002(b)(2). Neither privilege applies "to the republication of a matter if it is proved that the matter was republished with actual malice after it had ceased to be of public concern." *Id.* § 73.002(a).

However, as Frazier agrees in his brief, "the elements of falsity and of actual malice overlap with the privileges." And, the Supreme Court has noted that the privileges found in section 73.002 "bear[] on substantial truth." *See Hall*, 579 S.W.3d at 380. Because the trial court erroneously failed to consider ProPublica's substantial-truth defense, it similarly erred in refusing to consider its section 73.002 privileges.[3]

Accordingly, we sustain this portion of ProPublica's first issue.

### ProPublica's Intentional-Infliction-of-Emotional-Distress Defense

In its conclusions of law, the trial court stated, "Defendants are not entitled to dismissal based on defenses raised to Plaintiff's claim of intentional infliction of emotional distress because such defenses are dispositive legal questions and the

---

[3] We need not address ProPublica's argument that it did not stipulate to actual malice, but that it only agreed not to require Frazier to prove it at the Motion to Dismiss stage. It is clear from the record that ProPublica did not stipulate to falsity.

Texas Citizens Participation Act does not provide a procedural avenue for raising such questions." Specifically, Frazier argues that ProPublica presents "legal questions about IIED claims, not factual defenses that courts can weigh by the preponderance standard"[4] and that "[t]he proper avenue for Appellants' IIED arguments is not a TCPA motion but a motion to dismiss [under Rule 91a of] the Texas Rules of Civil Procedure."

In support, Frazier cites only to a footnote in *Youngkin v. Hines*, 524 S.W. 3d 278, 289 n.7 (Tex. App.—Waco 2016), *rev'd*, 546 S.W.3d 675 (Tex. 2018), in which the appellate court refused to address a legal defense raised for the first time on appeal and noted, in dicta, that "the TCPA does not provide a procedural avenue for raising potentially dispositive legal questions; it only provides for the nonmovant's establishment of a prima facie case or the movant's establishment of a valid defense by a preponderance of the evidence." *Id.*

However, *Youngkin* has been reversed and Frazier cites no other authority suggesting that legal defenses, in addition to factual defenses that must be proved by a preponderance, may not be raised in response to a TCPA motion to dismiss. Such an interpretation would also seem to run afoul of section 27.011 of the TCPA, which provides that "[t]his chapter does not abrogate or lessen any other defense, remedy,

---

[4] In its Motion to Dismiss, ProPublica made the legal argument that Frazier's IIED claim was not permissible because it is a "gap-filler" claim and that an alternative cause of action, i.e., defamation, would provide him a remedy.

19

immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." TEX. CIV. PRAC. & REM. CODE § 27.011.

But, we also note that ProPublica did, in fact, raise a factual defense to Frazier's IIED claim. Specifically, ProPublica claimed that Frazier could not make a prima facia showing for his IIED claim because he could not show "extreme and outrageous" conduct by ProPublica. Indeed, Frazier's claim that ProPublica caused him severe emotional distress is based on his claim that it published a false story about him. But, publication of a substantially true but embarrassing story is not extreme and outrageous conduct. *See KTRK Television v. Felder*, 950 S.W.2d 100, 108 (Tex. App.—Houston [14th Dist.] 1997, no writ) (holding that "substantially true" broadcast was not outrageous conduct as matter of law). Thus, just as the trial court erred in refusing to consider ProPublica's substantial-truth defense and its section 73.002 privileges, it also erred in failing to consider ProPublica's IIED defense.

### *Consideration of Irrelevant Expert Report*

At the Motion to Dismiss hearing, Frazier offered, and the trial court admitted, over objection, a report and survey conducted by Dr. Shannon LaBove. LaBove stated that she "was instructed to assume that the impressions made by the Defendants," i.e., Frazier's interpretation of the "gist" of the statements in the article, were false. LeBove then conducted a survey and asked whether the participants

would agree with the article if they were given additional information that Frazier claimed was favorable to him. The trial court relied on the LaBove Report and Survey in its Findings of Fact, stating four times, "Dr. Frazier presented clear and specific evidence—in the form of an expert report and the impressions of focal group participants—that an average reader would not have agreed with the false impression . . . if the reader had known the truth and full context."

At the hearing and on appeal, ProPublica contends, among other things, that the LeBove report is irrelevant because it provides subjective interpretations of whether the article is susceptible of defamatory interpretation, which is an issue that should be objectively determined by the court.

However, in light of this Court's holding that the trial court erred in failing to consider any of ProPublica's substantial-truth, privilege, and IIED defenses, we need not also determine whether it considered inadmissible evidence by Frazier, and we decline to do so. The trial court may, of course, revisit its evidentiary rulings on remand should it decide to do so.

**CROSS-POINT ON CONSTITUTIONALITY OF TCPA DEFENSES**

In a conditional cross-point on appeal,[5] Frazier contends that, even if the trial court erred by refusing to consider ProPublica's defenses, this Court should

---

[5]     Because Frazier's cross-point does not seek to alter the trial court's judgment, no notice of appeal was required. *See Dean v. Lafayette Place (Section One) Council*

nonetheless affirm because section 27.005(d) is unconstitutional. Specifically, Frazier argues that section 27.005(d), which allows defendants to prove their defenses by a preponderance of the evidence, usurps a plaintiff's right to a jury because it allows the trial court to weigh evidence and determine whether the defendant has brought forth a preponderance to support its defense.

ProPublica responds that we have no jurisdiction over Frazier's constitutionality argument because the trial court did not consider and address it in its order denying the motion to dismiss. We agree with ProPublica.

In *Hearst Newspapers, LLC. v. Status Lounge, Inc.*, the plaintiff argued in its response to the TCPA motion to dismiss and in a separate motion that the TCPA was unconstitutional. 541 S.W.3d 881, 894 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The trial court denied the defendant's TCPA motion to dismiss without mentioning constitutionality and denied by separate order the motion seeking to declare the statute unconstitutional. *Id.* The appellate court held that it did not have jurisdiction over the plaintiff's constitutional arguments because the applicable interlocutory appeal statute limits the court's jurisdiction to review of the order denying the motion to dismiss. *Id.* ("Because this court has jurisdiction only over the trial court's interlocutory order denying the defendants' motions to dismiss under

*of Co-Owners, Inc.*, 999 S.W.2d 814, 817 (Tex. App.—Houston [1st Dist.] 1999, no pet.)

the TCPA . . . , we cannot consider the order denying Status Lounge's motion to declare the TCPA unconstitutional on interlocutory appeal").

In this case, the trial court's order denying the motion to dismiss does not address plaintiff's constitutionality argument and constitutionality is not mentioned in the trial court's Findings of Fact and Conclusions of Law. Indeed, when Frazier moved for a ruling on his constitutional challenge, he stated that he "does not ask the Court to modify its December 18 order denying Defendants' motion to dismiss." The trial court did not, even after a request to do so, rule on Frazier's constitutional challenge. Because the trial court never ruled on the constitutionality of the TCPA in connection with the Motion to Dismiss, this Court has no interlocutory jurisdiction to consider it. *See Status Lounge*, 541 S.W.3d 894.

## CONCLUSION

ProPublica argues not only that the trial court erred by not considering its substantial-truth defense, it also asks this Court to do so as a matter of first impression and to render a judgment of dismissal in its favor. However, it is clear from the record that the trial court never considered ProPublica's substantial-truth defense, its privileges, or its IIED defenses when ruling on the motion. All of these are integral parts of a proper analysis of a motion to dismiss under the TCPA. Thus, as a court of review, we remand to the trial court to give it an opportunity to do so. *See Iola Barker v. Hurst*, No. 01-17-00838-CV, 2018 WL 3059795, at * (Tex.

App.—Houston [1st Dist.] June 21, 2018, no pet.) (memo. op.) ("We do not, however, reach the merits of [the defendants'] TCPA motion to dismiss with respect to [plaintiff's] claim because there is no indication in the record that the trial court actually considered the motion in regard to her.").

Accordingly, we reverse the trial court's order denying ProPublica's Motion to Dismiss and remand for further proceedings. We overrule all pending motions as moot.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Landau and Hightower.