**Opinion filed September 3, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-19-00318-CV

_____

## DAVID H. ARRINGTON OIL & GAS OPERATING, LLC; MIDLAND-PETRO D.C. PARTNERS, LLC; PERMIAN DEEP ROCK DRILLING, LLC; AND DAVID H. ARRINGTON, Appellants

## V.

## M. SCOTT WILSHUSEN, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV55454**

### O P I N I O N

Appellee, M. Scott Wilshusen, alleges that, while he was employed by Appellant David H. Arrington Oil & Gas Operating, LLC (AO&G), he was promised either an overriding royalty interest (ORRI) in production from certain oil and gas leases or payments equal to an ORRI. After Wilshusen did not receive any

payments, he sued 3 Platinum, LLC[1] and Appellants AO&G; Midland-Petro D.C. Partners, LLC; Permian Deep Rock Drilling, LLC; and David H. Arrington. As relevant to this appeal, Wilshusen asserted claims for fraud against AO&G, Midland-Petro, Permian Deep Rock, and Arrington; for conversion against Arrington and 3 Platinum; and for conspiracy against Appellants and 3 Platinum.

Appellants and 3 Platinum moved to dismiss Wilshusen's fraud, conversion, and conspiracy claims pursuant to the Texas Citizens Participation Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015) (the TCPA).[2] As discussed below, the trial court did not timely rule on the motion to dismiss, and the motion was denied by operation of law.

In their first issue, Appellants assert that, because the trial court ruled on the motion to dismiss, the motion was not denied by operation of law and that this court does not have jurisdiction over this interlocutory appeal until the trial court signs a written order. However, after Appellants filed their opening brief, we issued an order in which we held that Appellants' motion to dismiss was denied by operation of law in its entirety and that we have jurisdiction over this appeal.

In two additional issues, Appellants argue that they are entitled to the dismissal of Wilshusen's claims for fraud, conversion, and conspiracy because (1) they established by a preponderance of the evidence that the claims are based on, related to, or in response to their exercise of the right of association; (2) Wilshusen failed to present clear and specific evidence to establish a prima facie case for each

---

[1]3 Platinum, LLC is not a party to this appeal.

[2]The Texas legislature amended the TCPA effective September 1, 2019. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 1–9, 12 (H.B. 2730) (codified at TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001, .003, .005–.007, .0075, .009–.010). Because the underlying lawsuit was filed prior to September 1, 2019, the law in effect before that date applies. *See id.* §§ 11–12. For convenience, all citations to the TCPA in this opinion are to the version of the statute prior to September 1, 2019. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

essential element of the claims for fraud and conversion; and (3) if the fraud and conversion claims fail, the conspiracy claim fails as well. We affirm the trial court's denial, by operation of law, of the motion to dismiss because Appellants failed to establish that the TCPA applies to Wilshusen's claims.[3]

*Background*[4]

As the vice president of land and legal for AO&G, Wilshusen coordinated the acquisition of leasehold, surface, and mineral interests and managed the legal affairs of Arrington's "many companies." Of importance here, in 2014, Wilshusen was involved in the formation and organization of Midland-Petro for the purpose of acquiring leasehold, surface, and mineral interests within the city limits of Midland, Texas. Wilshusen described the "Midland Project" as "a unique and expansive undertaking" that involved drilling horizontal oil and gas wells under neighborhoods and businesses in Midland. Permian Deep Rock was the oil and gas operator for Midland-Petro. AO&G employed the personnel that managed and operated Midland-Petro and Permian Deep Rock.

Arrington requested that Wilshusen lead Midland-Petro's efforts to acquire leasehold, surface, and mineral interests for the Midland Project. According to Wilshusen, he "acted as the face of Midland-Petro," attended "countless meetings" with citizens and local government officials, negotiated land acquisitions vital to the Midland Project, supervised and directed more than fifty landmen who were tasked

---

[3]In his prayer, Wilshusen requests that we "remand this matter to the trial court solely for a determination of an award to [Wilshusen] of court costs, attorneys' fees, and other expenses incurred by him in defending against Appellants' meritless Anti-SLAPP Motion and this appeal." We note that, although Wilshusen requested an award of attorney's fees and costs in his response to the motion to dismiss, the trial court did not make any finding that would support such an award. *See* CIV. PRAC. & REM. § 27.009(b). We remand this case to the trial court for further proceedings and express no opinion on whether Wilshusen is entitled to an award of attorney's fees and court costs.

[4]The following facts are taken from Wilshusen's pleadings and the evidence attached to the motion to dismiss and the response to the motion. *See* CIV. PRAC. & REM. § 27.006(a). We note that a determination that Wilshusen "has met his TCPA burden does not establish that his allegations are true." *West v. Quintanilla*, 573 S.W.3d 237, 243 n.9 (Tex. 2019).

3

with obtaining over seven thousand leases from property owners, and reviewed and executed over 1,000 oil and gas leases.

Wilshusen's "executive management counterparts" were Keith Bucy, the general manager of Midland-Petro, AO&G, and Permian Deep Rock, and Brian Ball, the geology and exploration manager. In 2014, Arrington offered Wilshusen, Bucy, and Ball an ORRI in future production from the Midland Project, or a payment equivalent to an ORRI, in exchange for reduced cash bonuses. Wilshusen accepted Arrington's proposal and received reduced cash bonuses beginning in 2014. Between 2014 and 2016, Wilshusen had numerous conversations with Arrington and Bucy about the ORRI payments. Wilshusen also discussed the ORRI payments with Amy Dodson, AO&G's accounting manager, and Ashley Grimes, an accountant at AO&G.

Arrington formed 3 Platinum on April 4, 2016. Arrington told Wilshusen that 3 Platinum was named for his three platinum employees and was intended to be used to disburse the payments to Wilshusen, Bucy, and Ball. 3 Platinum would hold either an ORRI in the Midland Project or the equivalent of an ORRI and would pay Wilshusen, Bucy, and Ball "the equivalent of a one-half percent (1/2%) to one percent (1%)" ORRI each.

In the middle of 2016, tensions rose between Arrington and Wilshusen after Wilshusen expressed his intention to retire when he completed his work on the Midland Project. After several "incidents," Wilshusen resigned in October 2016. In December 2016, Bucy asked if Wilshusen would work as a consultant on the Midland Project. During the negotiation of the independent contractor agreement, Bucy represented that Wilshusen's work as a consultant would not affect his right to receive the ORRI payment.

In late 2017 or early 2018, Wilshusen learned that Midland-Petro had completed oil and gas wells in the Midland Project and that Bucy had been receiving

4

payments related to the Midland Project. Bucy recommended that Wilshusen contact Dodson about the status of the payments. Dodson told Wilshusen that 3 Platinum was making payments to Bucy and to Ball, but that Arrington had instructed Dodson to withhold payments to Wilshusen. Wilshusen has not received any payments based on production from the Midland Project.

Wilshusen sued Appellants and 3 Platinum and, as relevant to this appeal, asserted claims for fraud against AO&G, Midland-Petro, Permian Deep Rock, and Arrington; for conversion against Arrington and 3 Platinum; and for conspiracy against Appellants and 3 Platinum.[5] Appellants and 3 Platinum filed a motion to dismiss these claims pursuant to the TCPA. Appellants and 3 Platinum asserted that Wilshusen's claims for fraud, conversion, and conspiracy were based on, related to, or in response to Appellants' and 3 Platinum's exercise of the right of association and that Wilshusen could not establish by clear and specific evidence a prima facie case for each essential element of the claims.

The trial court heard the motion to dismiss on September 20, 2019. In a September 27, 2019 letter, the trial court informed the parties that it had concluded that the motion to dismiss "should be granted as to [Wilshusen's] fraud claim and denied as to his conversion claim and conspiracy theory." The trial court instructed Appellants' attorney "to prepare and provide an Order to opposing counsel and the Court[.] The Local Rules provide that counsel shall have ten (10) days to review and object to the proposed Order[.]"

The trial court did not sign an order, and on October 17, 2019, Appellants filed a notice of interlocutory appeal. On October 22, 2019, we informed the parties that the motion to dismiss had been denied by operation of law on October 21, 2019.

---

[5]Wilshusen also asserted claims against various defendants for breach of contract, quantum meruit, promissory estoppel, unjust enrichment, and money had and received.

Appellants responded to the court's letter and argued that the trial court's September 27, 2019 letter constituted a "ruling" that was sufficient to prevent the denial of the motion to dismiss by operation of law. Appellants asserted that, because the trial court did not sign a written order, this court did not have jurisdiction over the appeal. Appellants requested that we determine whether we had jurisdiction prior to further action on this appeal.

On December 19, 2019, we issued an order in which we disagreed with Appellants' position that the trial court's September 27, 2019 letter was a ruling. We noted that, in its September 27, 2019 letter, the trial court did not express any intent to rule and that the trial court directed Appellants' counsel to prepare an order, indicating that the trial court did not intend for its letter to be the operative order on the motion to dismiss. *See Inwood Forest Cmty. Improvement Ass'n v. Arce*, 485 S.W.3d 65, 71–72 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (trial court's statement in open court that it was "going to grant" the TCPA motions to dismiss was held not to be a "ruling"); *see also S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 858 (Tex. 1995) (per curiam) (stating that, with respect to the rendition of a judgment, the words used by a trial court must clearly indicate the intent to render judgment at the time that the words are expressed); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 602 (Tex. App.—Austin 2004, no pet.).

We noted in our December 19, 2019 order that a party could bring an interlocutory appeal after a TCPA motion to dismiss was denied by operation of law. *See* CIV. PRAC. & REM. § 27.008(a) (authorizing a party to appeal when the party's TCPA motion to dismiss "is considered to have been denied by operation of law"); *Avila v Larrea*, 394 S.W.3d 646, 655–56 (Tex. App.—Dallas 2012, pet. denied) (holding that an appellate court had jurisdiction over an interlocutory appeal from denial—by operation of law—of a TCPA motion to dismiss). We held that

Appellants' motion to dismiss was denied in its entirety by operation of law on October 21, 2019, and that we had jurisdiction to consider this interlocutory appeal.

*Jurisdiction*

In their first issue, Appellants contend that the trial court's "ruling" in the September 27, 2019 letter leaves only Wilshusen's claims for conversion and conspiracy at issue for this court, if we have jurisdiction; that the lack of a signed order did not result in the overruling by operation of law of the motion to dismiss as to the fraud claim; and that this court does not have jurisdiction until the trial court signs a formal order.

Appellants filed their brief on December 11, 2019. As set out above, on December 19, 2019, we issued an order in which we held that the trial court's September 27, 2019 letter was not a ruling, that Appellants' motion to dismiss was denied in its entirety by operation of law, and that we have jurisdiction over this interlocutory appeal. Therefore, we overrule Appellants' first issue.

*TCPA*

In their second and third issues, Appellants complain that the trial court erred when it allowed the motion to dismiss to be overruled by operation of law because Appellants established by a preponderance of the evidence that the TCPA applies to Wilshusen's claims; that Wilshusen failed to present clear and specific evidence to establish a prima facie case for each essential element of his fraud and conversion claims; and that, because Wilshusen's fraud and conversion claims must be dismissed, Wilshusen's conspiracy claim also fails.

The TCPA protects citizens from retaliatory lawsuits meant to intimidate or silence them on matters of public concern. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 376 (Tex. 2019); *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). "The Legislature enacted the TCPA 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and

otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.'" *In re Panchakarla*, No. 19-0585, 2020 WL 2312204, at *1 (Tex. May 8, 2020) (orig. proceeding) (per curiam) (quoting CIV. PRAC. & REM. § 27.002).

The TCPA provides for an expedited dismissal procedure when a legal action is based on, related to, or in response to a party's exercise of the right of free speech, right to petition, or right of association. CIV. PRAC. & REM. § 27.003(a); *Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018). The movant has the initial burden to demonstrate by a preponderance of the evidence that the legal action is based on, related to, or in response to one of the rights protected by the statute. CIV. PRAC. & REM. § 27.005(b); *Youngkin*, 546 S.W.3d at 679. If the movant makes this showing, the burden shifts to the nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. CIV. PRAC. & REM. § 27.005(c); *Youngkin*, 546 S.W.3d at 679. We review de novo the question of whether the parties satisfied their respective burdens. *Hall*, 579 S.W.3d at 377.

Appellants contend that they established by a preponderance of the evidence that Wilshusen's claims are based on, related to, or in response to Appellants' exercise of the right of association. The TCPA defines the "exercise of the right of association" as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." CIV. PRAC. & REM. § 27.001(2). The "common interest" "means something more than allegedly tortious communications between individuals in the pursuit of a private business endeavor." *Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *6 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.); *see also Norwich v. Jack N. Mousa, Ltd.*, No. 11-19-00339-CV, 2020 WL 2836789, at *5 (Tex. App.—Eastland May 29, 2020, pet. denied) (mem. op.).

When we determine whether Appellants carried their burden to establish that Wilshusen's claims fall within the scope of the TCPA, we consider the pleadings and affidavits that state the facts on which liability is based. CIV. PRAC. & REM. § 27.006(a). To determine the basis of the legal action, we examine the plaintiff's allegations rather than the defendant's admissions or denials. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). The plaintiff's pleading is "the 'best and all-sufficient evidence of the nature of the action.'" *Id.* (quoting *Stockyards Nat'l Bank v. Maples*, 95 S.W.2d 1300, 1302 (Tex. 1936)).

As pleaded, Wilshusen's claims for fraud, conversion, and conspiracy are based on or related to communications by Arrington and Bucy in which they allegedly promised Wilshusen that he would receive an ORRI in the Midland Project, or payments equivalent to an ORRI, and on Appellants' decision not to make any payments to Wilshusen. The only "common interest" implicated by the communications was Appellants' interest in Wilshusen's compensation and how, and whether, that compensation would be paid. Communications about Wilshusen's compensation for his work for Appellants is not a matter of public or community interest. *See Blue Gold Energy*, 2020 WL 1809193, at *6 (citing *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.] 2020, pet. filed) (en banc)); *see also Norwich*, 2020 WL 2836789, at *5.

Relying on our opinion in *ETC Texas Pipeline, Ltd. v. Addison Exploration & Development, LLC*, 582 S.W.3d 823 (Tex. App.—Eastland 2019, pet. filed), Appellants argue that they established a public or community interest because the communications related to the Midland Project. In *ETC*, Addison Exploration & Development, LLC was hired to locate an investor to finance the acquisition of oil and gas leases in an area known as the Settles Prospect. *Id.* at 829. Addison claimed that it presented the opportunity to Energy Transfer, LP or its subsidiary, ETC Texas Pipeline, Ltd., and that, during the negotiations, it was agreed that Addison would

9

receive the right to develop a midstream system to deliver and market the oil and gas from the wellhead to certain central delivery points. *Id.* at 830. Addison sued after it failed to receive the midstream rights. *Id.* at 831. Addison also alleged that ETC breached its contract when it acquired oil and gas leases in the Settles Prospect without Addison's written consent and, therefore, was required to hold the oil and gas leases that it had acquired in trust for Addison. *Id.* at 830, 839.

Energy Transfer and ETC, along with other defendants affiliated with Energy Transfer and ETC, filed a TCPA motion to dismiss Addison's claims. *Id.* at 832. We considered whether the pleaded claims were based on, related to, or in response to the exercise of the defendants' right of free speech, not the exercise of the right of association. *Id.* at 834, 836. The TCPA defines the "exercise of the right of free speech" as a "communication made in connection with a matter of public concern." CIV. PRAC. & REM. § 27.001(3). The TCPA contains a laundry list of issues that constitute a "matter of public concern." *Id.* § 27.001(7). Our focus in *ETC* was whether the communications were made in connection with a good, product, or service in the marketplace. *ETC*, 582 S.W.3d at 835; *see also* CIV. PRAC. & REM. § 27.001(7)(E).

We noted that the communications implicated by Addison's pleadings related to the acquisition of oil and gas leases, the division of the midstream rights, and the related contracts. *ETC*, 582 S.W.3d at 835. We specifically stated:

> The underlying basis of all of Addison's claims [was] that, as part of these communications, Addison was promised that any oil and gas interests acquired in the Settles Prospect without Addison's written consent would be held in trust for Addison and that Addison would have the right to collect oil and natural gas at the wellheads in the Settles Prospect and transport it to [central delivery points].

*Id.* Further, Addison alleged that Energy Transfer had "an extensive pipeline system and other midstream infrastructure" in the area of the Settles Prospect, that ETC and

another subsidiary of Energy Transfer had existing pipelines in the area that were used to transport oil and natural gas products, and that Energy Transfer's or ETC's proposal to finance the acquisition of the oil and gas leases anticipated that the oil and natural gas from the Settles Prospect would be delivered to these existing pipelines. *Id.* On these facts, we concluded that "communications about acquiring the oil and gas leases in the Settles Prospect and the right to gather and transfer oil and gas from those leases to the existing pipelines were at least tangentially related to an existing service in the marketplace." *Id.*; *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (concluding that the statutory requirement that the communication relate to a "good, product, or service in the marketplace" "suggests that the communication must have some relevance to a public audience of potential buyers or sellers").

Even if we assume that the Midland Project is a matter of public concern and that a communication about a "matter of public concern" is sufficient to establish a "common interest," *ETC* does not support the proposition that Appellants' communications were made in connection with a matter of public concern. The communications relied upon by Wilshusen did not relate to the development or completion of the Midland Project or to the transport or sale of oil or gas from leases in the Midland Project. Rather, the implicated communications were made in connection with Wilshusen's compensation for the work he performed for AO&G and Midland-Petro and were related to whether some of that compensation would be paid through a cash bonus, an ORRI, or a payment equivalent to an ORRI and whether the compensation would be paid after Wilshusen resigned. The communications related only to Appellants' and Wilshusen's private pecuniary interests and were not made in connection with a matter of public concern as defined by the TCPA. *See Creative Oil & Gas*, 591 S.W.3d at 136 (holding that communications between private parties with a limited business audience

11

concerning a private contract dispute did not relate to a matter of public concern under the TCPA); *Norwich*, 2020 WL 2836789, at *5.

We hold that Appellants failed to establish that Wilshusen's claims are based on, related to, or in response to Appellants' exercise of the right of association under the TCPA. Therefore, Appellants did not meet their burden to show that the TCPA applies to Wilshusen's claims, and the trial court did not err when it denied the motion to dismiss by operation of law. We overrule Appellants' second issue. Based on our resolution of Appellants' second issue, we need not address Appellants' third issue in which Appellants complain that Wilshusen failed to establish by clear and specific evidence a prima facie case for each essential element of the challenged claims. *See* TEX. R. APP. P. 47.1; *Norwich*, 2020 WL 2836789, at *6.

*This Court's Ruling*

We affirm the trial court's denial, by operation of law, of Appellants' TCPA motion to dismiss, and we remand the cause to the trial court for further proceedings.

KEITH STRETCHER
JUSTICE

September 3, 2020

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[6]

Willson, J., not participating.

---

[6]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.