**AFFIRMED and Opinion Filed December 2, 2020**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-20-00236-CV**
_____

**TERRI J. VAUGHN-RILEY, Appellant**
**V.**
**LAWAINNA PATTERSON, GID PORTER, PORTERHOUSE**
**PRODUCTION, LLC AND GAP MARKETING GROUP, LLC, Appellees**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-16947**

## MEMORANDUM OPINION

Before Justices Myers, Nowell, and Evans
Opinion by Justice Evans

Terri Vaughn-Riley (Vaughn) appeals from the trial court's denial of her

Texas Citizens Participation Act (TCPA or the Act) motion to dismiss the lawsuit

filed against her by Lawainna Patterson, Gid Porter, Porterhouse Production, LLC,

and GAP Marketing Group, LLC (collectively Patterson). In three issues, Vaughn

generally asserts the trial court erred in denying her motion because the Act applies

to the claims against her, Patterson failed to establish a prima facie case for each

cause of action against her, and Vaughn established viable affirmative defenses

against Patterson's claims entitling Vaughn to judgment as a matter of law. For the

reasons that follow, we conclude the Act does not apply to claims asserted against Vaughn. Accordingly, we affirm the trial court's order denying the motion to dismiss.

## BACKGROUND

According to Patterson's pleadings and the evidence filed in connection with the motion, Vaughn is an actor who, along with several other actors, contracted with Patterson for two performances in Tyler, Texas, of a play co-written by Patterson and entitled, "Sleeping with the Enemy." Patterson alleges Vaughn and the other actors failed to perform as agreed, breaching their contracts.[1] Patterson further alleges that Vaughn posted statements and videos that were defamatory to Patterson, and made slanderous and libelous statements that defamed the reputations of plaintiffs. Patterson also alleged Vaughn violated the Texas Deceptive Trade Practices Act.

Vaughn moved to dismiss the lawsuit pursuant to the TCPA asserting that Patterson's legal action was "based on or is in response to" Vaughn's exercise of the right of free speech or right of association because the claims are premised on Vaughn's "alleged statements, representations, and refusals detailed in Plaintiffs' Original Petition." Patterson filed a response to the motion arguing, among other

---

[1]The first Tyler performance took place as scheduled. The second performance was canceled over the theater's public address system one hour after it was scheduled to begin. The audience received ticket refunds. Patterson asserts other actors and Vaughn refused to perform the second show causing the cancellation.

things, the Act did not apply to her claims. According to Patterson, the communications or activities upon which her claims are based are not a matter of public concern, but rather Vaughn's attempt to shift the blame for the cancellation of the second Tyler performance. After a hearing, the trial court agreed with Patterson and signed an order denying the motion to dismiss. Vaughn filed this appeal.

## ANALYSIS

In her first issue, Vaughn contends Patterson's claims arise from Vaughn's exercise of the rights of free speech and association relating to a matter of public concern. As support for her contention, Vaughn asserts her statements and actions "concerned the quality and timeliness of the public performance of a theatrical work authored and produced by a limited purpose public figure and marketed to the public in Texas, Louisiana, and Oklahoma."

We review de novo a trial court's ruling on a TCPA dismissal motion. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). The express purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex.

CIV. PRAC. & REM. CODE § 27.002.[2]  In essence, the Act protects citizens from retaliatory lawsuits that seek to silence or intimidate them from exercising their rights in connection with matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015). (orig. proceeding).

To obtain dismissal under the Act, the movant has the threshold burden to establish the Act applies to the claims against her. *See* TEX. CIV. PRAC. & REM. CODE §§ 23.003(a); 27.005(b).  As relevant here, this initial burden is met if Vaughn demonstrates the legal action is based on or in response to, her exercise of the right of free speech or right of association. *See id*. §§ 27.005(b)(1)(A);(C).

The Act defines "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id*. § 27.001(3).  Similarly, the Act defines "[e]xercise of the right of association" as "to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." *Id*. § 27.001(2).  "Matter of public concern," in turn, is defined as a statement or activity regarding:

> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
>
> (B) a matter of political, social, or other interest to the community; or

---

[2] The Texas Legislature amended the TCPA effective September 1, 2019.  Those amendments apply to "an action filed on or after" that date.  Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law Serv. 684,687.  This lawsuit was filed on October 18, 2019. Thus, the current version of the law with 2019 amendments applies to this action.  All citations to the TCPA are to the current version unless otherwise indicated.

(C) a subject of concern to the public.

*Id*. § 27.001(7).

In analyzing whether or not the Act applies to a claim, we start by determining the basis of the legal action as set forth in the plaintiff's pleadings, which is the "best and all-sufficient evidence of the nature of the action." *RigUp, Inc., v. Sierra Hamilton, LLC*, No. 03-19-00399-CV, 2020 WL 4188028, at *3 (Tex. App.—Austin July 16, 2020, no pet.) (citing *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)). Patterson's claims are based on Vaughn's alleged refusal to perform the second Tyler show and statements she made following the show's announced cancellation. At the dismissal hearing, Patterson introduced into evidence a video Vaughn posted on Instagram in which Vaughn expressed her frustration and apologized to her fans over the cancellation of the performance, stating the following:

> The craziest thing in the world that has ever happened to me in my career of doing this just happened tonight. I am dressed . . . still have on my clothes for act one, for this play, make-up made . . . They just fucking cancelled the show that was supposed to start at 8:00 and its now like 9:00 and they cancelled the show and just told the audience. Obviously, they had some internal business shit that was happening, and they just cancelled the show, and I am floored. And I just want to apologize to anybody that came on my behalf; they came out to see me because I posted about the show . . . . Sorry, y'all.

As stated above, Vaughn argues her communications and actions relate to matters of public concern because they (1) pertained to Patterson, who she claims is a limited purpose public figure, (2) involved the quality and timeliness of the public performance of a theatrical work, and (3) concerned a service in the marketplace.

In its 2019 amendments, the legislature redefined "[m]atter of public concern" with the intent to narrow its scope as set forth in the remarks of Senators Kirk Watson and Bryan Hughes printed in the Senate Journal by unanimous consent. *See* S.J. of Tex., 86th Leg., R.S. 2023–24 (May 17, 2019). In relevant part, the senators engaged in the following dialogue:

> Senator Watson: . . . I just want to ask a couple of questions to establish some legislative intent. You mentioned that the bill tightens the definition of public concern. Will you explain what the bill does in this regard?
>
> Senator Hughes: Happy to. Under current law, lawyers and judges can apply the definition to almost any type of human activity. * * * Under the bill, the issue must be something that matters to the public at large, such as statements about public figures and statements about political and social issues. The tests for what counts as a matter of public concerns are taken from the 2011 U.S. Supreme Court case, *Snyder v. Phelps*. * * * The public figure issue is taken from a recent California Supreme Court case called *Filmon v. Double Verify*. California's anti-SLAPP statute is older than ours and is considered the model, after it was also reformed some years ago. This is very important because the statute will have established jurisprudence to guide Texas courts on how to apply the new law. Statements in a public protest against government policy, for example are covered by the definition. Statements made in private matters to a limited group of people would not be covered by the definition.
>
> Senator Watson: So if Texas courts look to *Snyder v. Phelps* and related cases, they'll be guided as to what's a public concern?
>
> Senator Hughes: Yes.

*Id*. In *Snyder*, the United States Supreme Court has stated that communications are matter of public concern when they can 'be fairly considered as relating to any matter of political, social or other concern to the community' or when it 'is a subject of

legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (internal citations omitted). "The arguably 'inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern'" *Id*. (quoting *Rankin v. McPherson*, 483 U.S. 378, 387 (1987).

Here, there is nothing to suggest that the cancellation of the second performance of a play in Tyler, Texas, was the subject of general interest and of value and concern to the public. At best, the cancellation may have been a concern to those who were associated with the play's production and those in the audience who had paid to see it. Vaughn cites no authority to support her contention that "the quality and timeliness of the public performance of a theatrical work" in general is a matter a public concern as defined by the Act and case law. Moreover, there is no evidence that the general public, or even the local Tyler creative community and art patrons at large were affected by or concerned with the cancellation of this single performance.

At the heart of this matter is whether the actors breached their contracts to perform the second Tyler show and the cause of the second Tyler show's cancellation. Vaughn's actions and communications regarding one isolated performance that did not go on as scheduled is simply not a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public. *See id*. at 453.

In reaching our conclusion, we reject Vaughn's contention that her communications and actions involve matters of public concern because they related to Patterson who she claims was a limited–purpose public figure. To establish Patterson as a limited-purpose public figure, Vaughn relies on the three-part test recited in *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). That test requires:

> (1) the controversy at issue must be public both in the sense that people are discussing it and people other than the immediate participants in the controversy are likely to feel the impact of its resolution;
>
> (2) the plaintiff must have more than a trivial or tangential role in the controversy; and
>
> (3) the alleged defamation must be germane to the plaintiff's participation in the controversy.

*Id.* at 571. Vaughn relies on Patterson's status as cowriter and producer of the play, as well as Patterson's decision to give a thirty-minute interview on YouTube in November 2019, *after* she filed this lawsuit against Vaughn and others. We do not agree these facts make Patterson a limited purpose public-figure relative to statements made and actions taken by Vaughn a year earlier. As stated above, Vaughn's statements and actions related to a single performance of a play rather than a subject of general interest, and of value and concern to the public at large. Thus, Vaughn has failed to establish the first prong of the *McLemore* test.

Finally, Vaughn contends that the TCPA applies to Patterson's claims against her because Vaughn's statements concerned a service in the marketplace. Although

the legislature's 2019 amendments to the Act specifically removed issues related to "a good, product, or service in the market place" from the definition of "matter of public concern,"[3] Vaughn nevertheless asserts "there is no indication of Legislative intent to narrow the TCPA's scope to exclude discussion pertaining to services in the marketplace." Given the legislature's express decision to remove the language, we disagree. But even if we agreed broadly with Vaughn that an issue related to service in the market place could still be a matter of public concern under the 2019 amendments to the Act, in order to find such, the movant would still need to show that the issue related to the service in the marketplace was a matter of public concern under the Act's current definition. Because Vaughn has not established the cancellation of a single performance was a matter of public concern, she has failed to demonstrate the Act applies to Patterson's suit against her. Accordingly, the trial court did not err in denying her motion. We resolve Vaughn's first issue against her.

Having concluded Vaughn failed to demonstrate the TCPA applies to the claims asserted against her, we need not address her remaining issues regarding (1) whether any of Patterson's claims were exempt from the Act, (2) whether Patterson

---

[3] The former statute provided a "Matter of public concern" includes an issue related to:

(A) health or safety;
(B) environmental, economic, or community wellbeing;
(C) the government;
(D) a public official or public figure; or
(E) a good, product, or service in the marketplace.

Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500.

established a prima facie case for each cause of action, and (3) whether Vaughn established an affirmative defense entitling her judgment as a matter of law on any of the claims.

## CONCLUSION

Based on the record before us, we conclude that Patterson's claims are not based on or in response to Vaughn's exercise of the right of free speech or right of association. Thus, Vaughn's statements and actions are not protected by the Act. We therefore affirm the trial court's order denying Vaughn's motion to dismiss pursuant to the TCPA.

/David Evans/
DAVID EVANS
JUSTICE

200236F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TERRI J. VAUGHN-RILEY,
Appellant

No. 05-20-00236-CV     V.

LAWAINNA PATTERSON, GID
PORTER, PORTERHOUSE
PRODUCTION, LLC AND GAP
MARKETING GROUP, LLC,
Appellees

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-16947.
Opinion delivered by Justice Evans,
Justices Myers and Nowell
participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant's "Motion to Dismiss Pursuant to the Texas Citizens Participation Act" is **AFFIRMED**.

It is **ORDERED** that appellees Lawainna Patterson, Gid Porter, Porterhouse Production, LLC, and Gap Marketing Group, LLC recover their costs of this appeal from appellant Terri J. Vaughn-Riley.

Judgment entered December 2, 2020.