**Opinion issued December 17, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-20-00425-CV

———————————

## STEVEN CHESSER, Appellant

## V.

## PAT AUCOIN, Appellee

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-06063**

---

## MEMORANDUM OPINION

This is an accelerated interlocutory appeal from the trial court's denial of a motion to dismiss under the Texas Citizens Participation Act. TEX. CIV. PRAC. & REM. CODE §§ 27.008, 51.014(a)(12). The underlying legal action is a suit on a promissory note.

Under the promissory note, Pat Aucoin agreed to loan Steven Chesser money to obtain financing for a cybersecurity business venture, and Chesser agreed to repay Aucoin by a date certain and to grant him stock in the venture if it obtained the sought-after financing. Aucoin loaned Chesser the money, but the venture did not obtain financing, and Chesser defaulted on the note.

Aucoin filed suit to recover the amount due and owing, and Chesser moved to dismiss under the TCPA, arguing that the suit was based on or in response to his exercise of the rights of free speech and association because it involved communications he made in connection with and pursuit of a matter of a public concern, namely, the funding of Chesser's cybersecurity business venture. The trial court denied the motion, and Chesser appealed.

We hold that Chesser failed to meet his initial burden to demonstrate that Aucoin's legal action is based on or in response to Chesser's exercise of the rights of free speech or association, as the private funding of his privately-owned business venture does not qualify as a matter of public concern under the TCPA.

Accordingly, we affirm.

## Background

This dispute arises from a promissory note under which the payee, Pat Aucoin, loaned the maker, Steven Chesser, a sum of money to obtain financing for a cybersecurity business venture, Data Privacy Group.

In 2017, Chesser developed a business plan for Data Privacy Group. Chesser determined that he would need financing and reached out to his friend and colleague, Aucoin, for advice. Aucoin, in turn, contacted a potential investor, and Aucoin and Chesser then had a call with the investor's broker, Drew Lambo.

During the call, Lambo stated that he could broker a $10 million non-recourse loan from the investor in exchange for 33% ownership in the company.[1] Lambo explained that the loan would require the company to deposit $110,000 into a proof-of-funds account.

After the call, Chesser told Aucoin that he did not have enough cash to make the $110,000 deposit, and Aucoin then offered to loan Chesser the money at zero percent interest. Chesser accepted the offer, and the two executed a promissory note.

Under the note, Aucoin agreed to loan Chesser $110,000, and Chesser agreed to repay Aucoin according to the note's terms. The note provided that the "full balance" was "due and payable" on January 4, 2018, and that "[i]n consideration for th[e] loan, on funding of [the] business plan for Data Privacy Group," Aucoin would receive 1% ownership in the company. The note contained an integration clause stating that there were "no verbal or other agreements which modif[ied] or

---

[1]  In a follow-up call, Lambo informed Chesser that the investor had revised its offer and now agreed to loan the funds in exchange for 40% ownership in the company.

3

affect[ed]" the note's "terms" and that the note could not be "modified or amended except by written agreement signed by" the parties.[2]

After signing the note, Aucoin gave Chesser two separate checks for $55,000. Chesser then deposited the checks into a proof-of-funds account held by a third-party. After the checks cleared, the third-party accountholder withdrew the funds, but the investor never provided the funding. Chesser was unable to recover the deposit, which caused him to default on the promissory note.

Aucoin sued Chesser for breach of contract seeking to recover the unpaid balance of the note. Chesser moved to dismiss under the TCPA, arguing that Aucoin's legal action is based on or in response to his exercise of the rights of free speech and association because it involves communications he made in connection with and pursuit of a matter of public concern, namely, the funding of his cybersecurity business venture. Aucoin responded that his legal action concerns a private business dispute unrelated to any matter of public concern.

After a hearing, the trial court denied Chesser's motion. Chesser appeals.

---

[2]    Despite the integration clause, Chesser alleges that the note contains additional nonwritten terms that he and Aucoin agreed to include both before and after signing the document. The issues presented in this appeal do not require us to determine whether the note contains any such nonwritten terms.

**Motion to Dismiss**

On appeal, Chesser argues that the trial court erred in denying his motion because (1) he met his initial burden to demonstrate that Aucoin's legal action is based on or in response to Chesser's exercise of the right of free speech and the right of association and (2) Aucoin failed to meet his burden to establish a prima facie case for his suit on a promissory note.

## A. Applicable law

Enacted in 2011,[3] the TCPA is "an anti-SLAPP law—the acronym standing for strategic lawsuit against public participation." *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 713 n.6 (Tex. 2016). Its stated purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." CIV. PRAC. & REM. § 27.002. To that end, the TCPA establishes an expedited procedure to dismiss groundless legal actions that impinge on certain statutorily defined rights, namely, the right of free speech, the right to petition, and the right of association. *Id.* §§ 27.001(2)–(4), 27.003; *Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016).

---

[3] *See* Act of May 18, 2011, 82nd Leg., R.S., ch. 341, § 1, 2011 Tex. Gen. Laws 961 (stating that "Act may be cited as the Citizens Participation Act").

Under the TCPA, if a legal action is "based on or is in response to" the defendant's exercise of these rights, the defendant "may file a motion to dismiss the legal action." CIV. PRAC. & REM. § 27.003(a). Once a motion to dismiss is filed, a burden-shifting mechanism goes into effect. *See In re Lipsky*, 460 S.W.3d 579, 586–87 (Tex. 2015) (orig. proceeding).

The defendant has the initial burden to "demonstrate[]" that the plaintiff's legal action is "based on or is in response to" the defendant's exercise of a statutorily-defined right. CIV. PRAC. & REM. § 27.005(b)(1). If the defendant meets his initial burden, the burden shifts to the plaintiff to either (1) establish that the legal action is exempt, *see id.* § 27.010(a) (listing exempted legal actions), or (2) establish by "clear and specific evidence a prima facie case for each essential element of the claim in question[,]" *id.* § 27.005(c). If the plaintiff establishes that the legal action is exempt, the trial court must deny the motion. *See Newpark Mats & Integrated Servs. v. Cahoon Enters.*, 605 S.W.3d 671, 678 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (plaintiff can avoid dismissal by showing one of TCPA's exemptions applies). If the plaintiff establishes a prima facie case for his claim, the burden shifts back to the defendant to establish "an affirmative defense or other grounds on which the [defendant] is entitled to judgment as a matter of law." CIV. PRAC. & REM. § 27.005(d).

If the defendant prevails, the trial court must dismiss the legal action and award to the defendant court costs and reasonable attorney's fees. *Id.* §§ 27.005(b), 27.009(a)(1). The trial court may also award the defendant sanctions against the plaintiff sufficient to deter future similar actions. *Id.* § 27.009(a)(2). If the plaintiff prevails, and the trial court finds that the defendant's motion was "frivolous or solely intended to delay," the trial court may award court costs and attorney's fees to the plaintiff. *Id.* § 27.009(b).

When determining whether to dismiss the legal action, the trial court must "consider the pleadings, evidence a court could consider under Rule 166a [of the] Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a).

## B.  Analysis

We begin by considering de novo whether Chesser met his initial burden to demonstrate that Aucoin's legal action is based on or in response to Chesser's exercise of the right of free speech or the right to association. *See id.* § 27.005(b)(1)(A), (C); *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (whether movant meets initial burden is question of law reviewed de novo).

**1. Chesser failed to show Aucoin's legal action is based on or in response to Chesser's exercise of the right of free speech.**

Under the TCPA, the "exercise of the right of free speech" is defined as "a communication made in connection with a matter of public concern." CIV. PRAC. & REM. § 27.001(3). A "matter of public concern" is in turn defined as "a statement or activity regarding" either:

> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
> (B) a matter of political, social, or other interest to the community; or
> (C) a subject of concern to the public.

*Id.* § 27.001(7). The current definition of a "matter of public concern" has been in effect since 2019. *See* Act of June 2, 2019, 86th Leg., R.S., ch. 378, §§ 1–12, 2019 Tex. Sess. Laws Ch. 378. Before then, the TCPA did not strictly define what constituted a "matter of public concern" but instead provided a non-exhaustive categorical list of examples:

> "Matter of public concern" includes an issue related to:
> (A) health or safety;
> (B) environmental, economic, or community well-being;
> (C) the government;
> (D) a public official or public figure; or
> (E) a good, product, or service in the marketplace.

Act of June 17, 2011, 82nd Leg., R.S., ch. 341, § 27.001(7), 2011 Tex. Gen. Laws 961, 962.

Thus, the prior version's non-exclusive categorical list of what constitutes a "matter of public concern" has been replaced with a more generalized definition encompassing "statement[s]" and "activit[ies] regarding" one of three listed subject matters. The listed subject matters are based in part on and track language from *Snyder v. Phelps*, the landmark decision in which the United States Supreme Court explained when speech deals with matters of public concern and is thus entitled to special protection under the First Amendment:

> Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.

562 U.S. 443, 453 (2011) (quotation marks and citations omitted).

Thus, the current definition of a "matter of public concern" more strongly emphasizes the term's public component and thereby furthers the TCPA's stated and unchanged purpose: "to encourage and safeguard the *constitutional* rights of persons to . . . speak freely." CIV. PRAC. & REM. § 27.002 (emphasis added).

Here, Chesser contends that Aucoin's legal action is based on or in response to communications made in connection with the funding of his cybersecurity business venture. Chesser further contends that the funding of his cybersecurity business venture is "a matter of . . . social . . . or other interest to the community" as well as "a subject of concern to the public." *Id.* § 27.001(7)(B), (C). But Chesser

9

does not explain how or why. Nor does he cite any authority in support of his contention. Instead, he simply asserts, without explanation or authority, that the funding of his cybersecurity business venture qualifies as a matter of public concern. In the absence of any argument or authority in support for his contention, we cannot conclude that the private funding of Chesser's privately-owned business venture is anything other than a purely private matter. *See, e.g.*, *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 136 (Tex. 2019) (holding that lessor's communications to third parties about alleged termination of oil and gas lease, which had "a limited business audience concerning a private contract dispute," did not relate to matter of public concern under prior version of TCPA); *Schmidt v. Crawford*, 584 S.W.3d 640, 650 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (holding that allegedly fraudulent statements in real property dispute did not constitute matter of public concern under prior version of TCPA when statements "affected [defendants'] own financial well-being" but not well-being of broader economy); *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 239–40 (Tex. App.—Eastland 2019, no pet.) (holding that "communications . . . made in connection with the purchase and sale of interests in [real] property" did not relate to matter of public concern under prior version of TCPA but rather "related only to the parties' personal financial well-being").

Accordingly, we hold that Chesser has failed to demonstrate that Aucoin's legal action is based on or in response to Chesser's exercise of the right of free speech. We now turn to the right of association.

### 2. Chesser failed to show Aucoin's legal action is based on or in response to Chesser's exercise of the right of association.

Under the TCPA, the "exercise of the right of association means to join together to collectively express, promote, pursue, or defend common interests relating to a governmental proceeding or a matter of public concern." CIV. PRAC. & REM. § 27.001(2). Here, Chesser contends that Aucoin's legal action is based on or in response to Chesser's joining together with Aucoin and others to collectively express, promote, and pursue common interests relating to a matter of public concern, namely, the funding of Chesser's cybersecurity business venture and the venture's providing cybersecurity services to the public.[4]

But as before, Chesser does not explain how or why these matters qualify as matters of public concern or cite authority in support of his contention. And as before, we cannot conclude that the private funding of a privately-owned business qualifies as anything other than a purely private matter. The same goes for the manner in which that privately-owned business provides services to its clients. *See Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 476 (Tex. App.—Houston [1st Dist.]

---

[4] Chesser does not contend these common interests relate to a governmental proceeding.

11

2020, pet. dism'd) (en banc) (holding that communications made in furtherance of "new business venture" did not constitute exercise of right of association under prior version of TCPA).

Accordingly, we hold that Chesser has failed to demonstrate that Aucoin's legal action is based on or in response to Chesser's exercise of the right of association. Thus, Chesser has failed to meet his initial burden to demonstrate that Aucoin's legal action is based on or in response to Chesser's exercise of a statutorily-defined right.

**3.     Because Chesser failed to meet his initial burden, the trial court did not err in denying his motion.**

Having concluded that Chesser failed to meet his initial burden, we need not determine whether Aucoin established a prima facie case for his suit on a promissory note. We hold that the trial court did not err in denying Chesser's motion to dismiss and accordingly overrule his sole issue.

**Conclusion**

We affirm the trial court's order denying Chesser's motion to dismiss.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Adams.

12