**Affirmed and Opinion filed August 10, 2023.**



In The

## Fourteenth Court of Appeals

---

### NO. 14-22-00826-CV

---

### EDRY-TX-II, GP, EDRY-TX-III, GP, ROBERT J. SALEK, RUTH E. SALEK, AND BRIAN SALEK, Appellants

### V.

### CCND-MAIN ST SHOPPING CENTER, LP, Appellee

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2022-25863**

---

### OPINION

This is an interlocutory appeal from a deemed denial of a motion to dismiss under the Texas Citizens Participation Act ("TCPA"). Assuming without deciding that the TCPA applies, we conclude that the nonmovant met its burden of establishing with clear and specific evidence a prima facie case for each essential element of its legal action. We further conclude that—for purposes of the TCPA— the movant waived its affirmative defense by not asserting any such defense in its

original TCPA motion or in any reply filed before the TCPA's sixty-day deadline. We therefore affirm the deemed denial of the motion to dismiss.

## BACKGROUND

This case arises out of a parking dispute.

The parties are the owners of three separate but contiguous tracts of commercial property, which altogether comprise a shopping center. The appellants, whom we identify collectively as "Edry," are the owners of two tracts, and the appellee, whom we identify as "CCND," is the owner of the third tract.

In 1993, the parties' predecessors in interest recorded a "Declaration of Reciprocal Easement, Access and Parking Agreement." That easement allows the owners and their respective tenants, employees, guests, invitees, and licensees to park on all three tracts in the shopping center.

In 2017, CCND applied for a permit from the city to build an additional commercial structure on an area of its tract that was then being used as a parking lot. When Edry learned of CCND's permitting application, Edry contacted the city and objected that CCND's proposed project would violate the terms of the easement, as well as the terms of the city's own parking code, which mandates a certain number of parking spaces per establishment. Despite these objections, the city indicated that it would grant the requested permit to CCND.

When Edry learned of the city's permitting decision, Edry contacted the city again and demanded to know what sort of analysis the city had performed to ensure that there would be enough parking spaces available for CCND's project. The city referred Edry's demand to the Office of the Attorney General to determine if a response was required, and that office opined that the city must withhold the requested information.

In 2018, shortly after learning that the city would not disclose the requested information, Edry unilaterally recorded two instruments, each entitled "Parking Designation as Provided for in the Declaration of Reciprocal Easement Access and Parking Agreement." In these two instruments, Edry declared that the parking spaces in its separate tracts may be assigned and designated for the sole and exclusive use of each tract's tenants. Edry further explained that these designations were authorized by a clause in the easement, which provided that parking spaces may be reserved "in the event that . . . there becomes a need to designate specific assigned and reserved parking spaces."

Edry notified both CCND and the city of its two parking designations. CCND responded to that notice by explaining that there was no need for the parking designations and by demanding that Edry release both instruments. Edry did not file any such release.

In 2022, more than four years after receiving Edry's notice of the parking designations, CCND filed suit against Edry to quiet title, specifically challenging the two parking designations. CCND also sought a declaratory judgment.

Edry filed a motion to dismiss CCND's suit under the TCPA. Following a response and a hearing, the trial court took no action on the motion, which meant that the motion was eventually denied by operation of law.

Edry now brings this interlocutory appeal of that deemed denial. *See* Tex. Civ. Prac. & Rem. Code § 27.008(a) ("If a court does not rule on a motion to dismiss under Section 27.003 in the time prescribed by Section 27.005, the motion is considered to have been denied by operation of law and the moving party may appeal.").

3

# ANALYSIS

When considering a trial court's ruling on a TCPA motion (or in this case a deemed ruling), there are typically three steps in the reviewing court's analysis. *See Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019) ("The statute requires a three-step decisional process."). In the first step, the reviewing court considers whether the moving party demonstrated that a legal action was based on or was in response to the party's exercise of the right of free speech, the right to petition, or the right of association. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). If the reviewing court determines that the moving party satisfied that initial burden, then the court proceeds to the second step, which is to consider whether the nonmoving party established by clear and specific evidence a prima facie case for each essential element of the claim in question. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c). If the reviewing court determines that the nonmoving party satisfied that burden, then the court turns to the third step, which is to consider whether the moving party established an affirmative defense or other grounds for judgment as a matter of law. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d). Whether the parties have met these respective burdens is a question of law that the reviewing court considers de novo. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

## I.    Step One

Edry was the moving party below, which meant that Edry had the initial burden of showing that CCND's legal action was based on or was in response to Edry's exercise of a protected right. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). Edry argued in the trial court that CCND's legal action was based on or was in response to Edry's exercise of the right to petition, or alternatively, the right of free speech. Edry repeats those arguments on appeal.

We need not determine whether Edry's arguments in Step One are meritorious, because we ultimately resolve the arguments in Step Two and Step Three in favor of CCND. Therefore, for purposes of this appeal, we can simply assume without deciding that Edry successfully demonstrated that CCND's legal action was based on or was in response to Edry's exercise of a protected right. *See* Tex. R. App. P. 47.1.

## II.    Step Two

If, as we assume, that Edry demonstrated that the TCPA applies to CCND's legal action, then the burden shifted to CCND to establish with clear and specific evidence a prima facie case for each essential element of the claim in question. *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

CCND asserted a claim to quiet title, and another claim for declaratory judgment. We examine each of these claims in turn.

### A.    Suit to Quiet Title

To establish a prima facie case under the TCPA for its suit to quiet title, CCND was required to show with clear and specific evidence the following essential elements: (1) CCND has an interest in a specific property; (2) that specific property interest is affected by a claim from Edry; and (3) Edry's claim, although facially valid, is invalid or unenforceable. *See Lil C Ranch, LLC v. Ridgefield Eagle Ford Minerals, LLC*, No. 14-21-00285-CV, 2023 WL 2386940, at *8 (Tex. App.— Houston [14th Dist.] Mar. 7, 2023, no pet.) (mem. op.).

The TCPA does not define "prime facie case," but in the absence of a statutory definition for this phrase, we apply its traditional legal meaning, which is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *See In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig.

5

proceeding). The TCPA does not define the "clear and specific" standard either, but "clear" means "unambiguous, sure, or free from doubt," and "specific" means "explicit or relating to a particular named thing." *Id.*

When deciding whether these standards were satisfied, the scope of our review includes the pleadings and any supporting affidavits, both of which are taken as evidence in the TCPA context. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a); *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). We also review this evidence in the light most favorable to CCND, because CCND is the nonmovant. *See Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

Beginning with the first element—whether CCND has an interest in a specific property—CCND produced an affidavit from its general partner, who testified that CCND has been the owner of one of the three tracts in the shopping center since 2005, and that Edry is the current owner of the remaining two tracts. The partner further testified that, when CCND purchased its tract, CCND also acquired parking rights under the easement that governed all three tracts. When combined with a copy of that easement, which was also attached to CCND's response to Edry's TCPA motion, this affidavit testimony constitutes clear and specific evidence that CCND possesses an ownership interest in its singular tract, as well as an easement interest in the two tracts owned by Edry.

For the second element, CCND was required to show that its interest in a property was affected by a claim from Edry. In its response to Edry's TCPA motion, CCND focused specifically on its easement interest in Edry's two tracts, rather than the ownership interest in its separate third tract. And as to that easement interest, CCND argued that its rights were curtailed by Edry's parking designations. In each of those designations—copies of which were also attached to CCND's response—

6

Edry "hereby declares and designates all of the vehicular parking owned by [Edry] solely and exclusively for the use of [Edry's] tenant(s)." These designations effectively negate CCND's easement interest in Edry's two tracts. We accordingly conclude that CCND produced clear and specific evidence that its easement interest was affected by a claim from Edry.

For the third element, CCND was required to show that Edry's claim, though facially valid, is invalid or unenforceable. In its response to Edry's TCPA motion, CCND stated that Edry's parking designations had the "impression" of validity, insofar as Edry had cited a provision in the easement that authorized the making of the designations. But CCND argued that the designations were not actually valid because they were contrary to the terms of the easement. For example, the easement authorizes an owner to designate "specific" assigned and reserved parking spaces— and according to CCND, that language does not authorize an owner to make a blanket designation across an entire tract, which is what Edry did. Also, the easement only authorizes an owner to make a designation "in the event that . . . there becomes a need," and CCND argued that there was no such need.

In support of the latter argument, CCND referred to the affidavit testimony of its general partner, who explained that its new commercial structure did not decrease the number of parking spaces available in the shopping center. The partner added that CCND reconfigured the parking lot within its own tract by creating parking spaces along the perimeter, where no such parking spaces had existed before. According to the partner, this reconfiguration allowed for the total available parking spaces within CCND's tract to increase by two: before the construction project, there were only thirty-eight parking spaces within the tract; but now that the project has been completed, there are forty. The partner also testified that CCND installed new racks capable of holding twelve bicycles, which are considered the equivalent of

three additional parking spaces. This evidence is clear and specific, and it establishes a prima facie case that Edry did not have a valid need for its parking designations.

Edry makes several counterarguments, the first of which focuses on CCND's response to the motion to dismiss, where CCND asserted that Edry's filing of the parking designations was ultra vires, and therefore null and void from the outset. Edry argues that this point must fail because CCND did not produce any evidence that the recording of the parking designations was ultra vires. This argument lacks merit for two reasons. First, CCND did not allege an ultra vires act in its petition, and that petition is the only legal action that Edry has sought to dismiss. And second, CCND has no burden of proving an ultra vires act in a suit to quiet title, which was actually alleged in CCND's petition. As explained above, there are only three essential elements in a suit to quiet title, and none of them requires evidence of an ultra vires act.

Edry contends next that CCND's pleadings were conclusory and based on a misinterpretation of the easement. In Edry's view, the easement only grants rights of ingress and egress across the three tracts—not rights to parking. Edry bases this limited scope on the following sentence from the easement: "There is hereby created an unobstructed easement upon, over and across those portions of the Property which are, from time to time, used or designated as vehicular parking areas."

We have two responses to this argument.

First, Edry fails to appreciate the very next sentence in the easement, which states as follows: "Such easement shall be used solely for the purpose of vehicular parking." That sentence plainly grants an easement interest in the parking spaces of the three tracts—not just a right of ingress and egress. Indeed, no reasonable interpretation of the easement could exclude a grant of parking rights, because otherwise, there would be no purpose for having a provision stating that the owners

8

can designate reserved parking spaces when the need to do so arises. Even Edry acknowledged this broader scope in its motion to dismiss, where Edry made the following representations: "The Declaration establishes parking easements among these three Tracts of real estate at the Shopping Center. . . . The Declaration sets forth that parking would be shared amongst the three Tracts, unless parking spaces were designated to be used only for a single Tract." Edry cannot now claim that the easement does not cover parking.

And second, insofar as Edry solely challenges CCND's pleadings, Edry fails to appreciate that CCND attached other evidence to its response. As explained above, that evidence was clear and specific, not conclusory.

Edry also argues that CCND cannot show that the parking designations are invalid because Edry has an unfettered right under the easement to make such a designation, even unilaterally. We disagree. The easement authorizes the making of a designation "in the event that . . . there becomes a need." This authorization is not unfettered. It is plainly qualified upon the existence of a need. And as explained above, CCND established a prima facie case with clear and specific evidence that Edry had no such need.

For all of the foregoing reasons, we conclude that CCND established a prima facie case for all three essential elements in its suit to quiet title.

## B. Declaratory Judgment

In its original petition, CCND labeled its claim for declaratory judgment as a separate count from its suit to quiet title. But in its response to Edry's TCPA motion, CCND did not treat its declaratory judgment action as having its own separate set of essential elements. Now in its appellee's brief, CCND treats its claim for declaratory judgment as being tied to its suit to quiet title. CCND explains as follows:

9

CCND's request for declaratory relief effectively tracks its claim to quiet title in that it seeks a declaration that the Designations 'are improper clouds upon Plaintiff's title, are null and void and of no force or effect.' That is, if CCND prevails on its quiet title claim, it would also be entitled to the declaratory relief sought.

We agree with this analysis.

The Uniform Declaratory Judgment Act ("UDJA") is "merely a procedural device for deciding cases already within a court's jurisdiction." *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Stated another way, the UDJA provides a remedy without changing the basic character of a suit—which, here, is just a suit to quiet title. *See State v. Morales*, 869 S.W.2d 941, 947 (Tex. 1994).

Nevertheless, this court has suggested that a declaratory judgment action has its own essential elements, and that a prima facie case can be established "when a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought." *See Comcast Corp. v. Houston Baseball Partners LLC*, 627 S.W.3d 398, 424 (Tex. App.—Houston [14th Dist.] 2021), *aff'd on other grounds*, No. 21-0641, 2022 WL 20271185 (Tex. 2022). But this standard is more appropriately understood as a test for subject-matter jurisdiction. *See Sw. Electric Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020).

In any event, if we were to treat this standard as a set of essential elements, then we would still conclude that CCND established a prima facie case for its declaratory judgment action because CCND showed that it had a real dispute with Edry concerning its easement interest, and that the dispute would be resolved with a declaration. *Id.* at 685–86 (concluding that there was jurisdiction in a suit involving a declaratory judgment action over an easement).

## III. Step Three

Because CCND established a prima facie case with clear and specific evidence for every essential element in its legal action, the burden shifted back to Edry to establish an affirmative defense or other grounds for judgment as a matter of law. *See* Tex. Civ. Prac. & Rem. Code § 27.005(d).

Edry argues on appeal that it satisfied this burden because it proved as a matter of law that CCND's legal action is barred by a four-year statute of limitations. CCND responds that Edry waived that defense for purposes of the TCPA because Edry did not assert it in its motion to dismiss. Instead, Edry asserted that defense in a reply, and CCND argues that this late assertion is not valid under the TCPA. For the reasons that follow, we agree with CCND.

The TCPA contains many deadlines. A motion to dismiss under the TCPA "must be filed not later than the 60th day after the date of service of the legal action," unless the parties mutually agree to extend the time to file the motion, or unless the court extends the filing deadline upon a showing of good cause. *See* Tex. Civ. Prac. & Rem. Code § 27.003(b). Once the motion to dismiss is served, a hearing must be set within another sixty days, barring certain exceptions not relevant here. *See* Tex. Civ. Prac. & Rem. Code § 27.004(a). The nonmoving party must then file a response no later than seven days before that hearing, again barring certain exceptions. *See* Tex. Civ. Prac. & Rem. Code § 27.003(e). And the trial court must rule on the motion to dismiss no later than thirty days after the hearing. *See* Tex. Civ. Prac. & Rem. Code § 27.005(a).

Edry timely filed its motion to dismiss, but Edry never asserted its limitations defense in that motion. In fact, Edry did not assert any defense at all, which CCND emphasized in its separate response: "In their Motion, Defendants did not make any attempt to prove as a matter of law any affirmative defense or other ground on which

11

Defendants would be entitled to judgment as a matter of law." After CCND filed this response—and more than sixty days after CCND served its legal action—Edry filed a reply, where it asserted its limitations defense.

But the TCPA does not contain any provision regarding the filing or consideration of a reply. The trial court must rule "on a motion under Section 27.003"—not a motion in conjunction with a reply. *See* Tex. Civ. Prac. & Rem. Code § 27.005(a). Even if Edry's reply could be construed as a motion in this case, it would be untimely because Edry served it more than sixty days after CCND's legal action, and there has been no showing that the parties mutually agreed to that late assertion, or that the trial court extended the filing deadline upon a showing of good cause. We therefore conclude that, for purposes of the TCPA, Edry's limitations defense was never properly before the trial court and that we cannot consider it on appeal either.

Edry suggests in its reply brief that it could not have asserted its limitations defense until CCND first established a prima facie case in its response—which, if true, would mean that Edry could then properly assert its limitations defense in a reply. We disagree. Edry did not need to know whether or how CCND claimed to establish a prima facie case because the statute of limitations is an affirmative defense that defeats a cause of action "without regard to the truth of the plaintiff's assertions." *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 156 (Tex. 2015).

Edry asserted a limitations defense in its original answer. Edry could have similarly asserted that defense in its TCPA motion to dismiss. But by not asserting that defense in its motion, we conclude that Edry waived that defense for purposes of the TCPA. Accordingly, we do not consider the merits of that defense in this appeal.

12

Because Edry did not timely assert any defense in connection with its TCPA motion, we also conclude that Edry did not establish that it was entitled to a dismissal of CCND's legal action.

## CONCLUSION

The deemed denial of Edry's motion to dismiss is affirmed.



/s/     Tracy Christopher
        Chief Justice


Panel consists of Chief Justice Christopher and Justices Zimmerer and Poissant.